THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
HENRY C. WHITTEMORE *et al.* Appellants.

*Opinion filed February 23, 1912.*

1. BONDS—*laches in asserting breach of State officer's bond is
not imputable to State.* Laches or unreasonable delay on the part
of State officers in asserting a breach of a State Treasurer's bond
is not imputable to the State when acting in its character of a
sovereign.

2. SAME—*what may be required of creditor by surety.* In the
absence of any statutory provision, all that a surety has a right to
require of his creditor is that no affirmative act shall be done that
will operate to his prejudice.

3. PUBLIC OFFICERS—*when the State is not estopped to declare
breach of State Treasurer's bond.* The circumstances under which
the State may be estopped are such, only, as render the applica-
tion of the doctrine necessary to remedy serious mischief to in-
dividuals, and the mere fact that State officers for many years fail
to declare a breach of a State Treasurer's bond does not estop the
State from subsequently declaring it.

4. SAME—*State Treasurer's reports to Governor are not stated
accounts.* There are no constitutional or statutory provisions au-
thorizing the Governor to settle and adjust the accounts of the
State Treasurer, and the latter's reports to the Governor, which
do not disclose illegal payments of money to such State Treasurer
without any appropriation therefor having been made by the legis-
lature, are not stated accounts which are conclusive upon the State.
(*State* v. *Illinois Central Railroad Co.* 246 Ill. 188, distinguished.)

5. SAME—*State Treasurer's settlements with taxing districts do
not bind the State.* The State Treasurer's settlements with taxing
districts, relating to money of the State, have no effect upon the
rights of the State with reference thereto.

6. SAME—*when an erroneous construction cannot be held to be
correct though followed by many officials.* If a provision of the
constitution or a statute is clear and unambiguous, an erroneous
construction thereof cannot be held to be correct by reason of the
number of public officials who have followed such erroneous con-
struction or the length of time such construction has remained un-
questioned. (*Whittemore* v. *People,* 227 Ill. 453, adhered to.)

7. SAME—*what does not release surety on a State Treasurer's
bond.* The facts that no suits were brought against certain of the
solvent sureties on a State Treasurer's bond during their lifetime

and that the claims against their estates are barred by the Statute of Limitations do not release a co-surety from a liability, which is otherwise enforceable, for a breach of such State Treasurer's bond.

8. CONSTITUTIONAL LAW—*when parties cannot raise a constitutional question.* In a proceeding to establish a claim against the estate of a surety on a State Treasurer's bond for money raised by taxation which the State Treasurer illegally paid to himself without any appropriation, the executors of the surety's estate cannot raise the question that the act under which the money was collected is unconstitutional, as courts will not entertain objections to the constitutionality of an act urged by persons whose rights have not been affected.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

GEORGE B. GILLESPIE, and A. M. FITZGERALD, for appellants.

W. H. STEAD, Attorney General, (B. F. LINCOLN, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, Henry C. Whittemore, Harry M. Whittemore and Floyd Whittemore, executors of the last will and testament of Floyd K. Whittemore, deceased, appealed to the circuit court from a judgment of the probate court of Sangamon county allowing a claim in favor of the appellee, the State of Illinois, against the estate of Whittemore. A jury was waived and the cause was tried by the circuit court. The claim was founded on two warrants. The first, (No. 6859,) for $9286.25, was issued on September 30, 1878, and the second, (No. 8696,) for $9541.85, was issued on September 30, 1882. Both warrants were drawn in favor of Edward Rutz, State Treasurer, for services in collecting and disbursing interest on registered bonds of local municipalities. Rutz was State Treasurer

for two terms of two years each, one term beginning on the second Monday in January, 1877, and the other on the second Monday in January, 1881. Floyd K. Whittemore was one of the sureties on the official bond of Rutz for each term. The warrants were issued on vouchers made by Rutz and filed with the Auditor of Public Accounts. The voucher on which No. 6859 was issued was "for expenses of receiving, disbursing and keeping accounts of taxes collected, for payment of interest, etc., on registered bonds of the localities named, including clerical services for the work in the State Treasurer's office on account of such registered bonds and other expenses in connection therewith, as estimated by the Auditor and Treasurer in pursuance of law." The voucher on which the second warrant (No. 8696) was issued was substantially the same as the previous one, except that the amount was $9541.85. Rutz received the warrants and paid the several amounts to himself, and the amounts so paid were in addition to his salary as State Treasurer and were paid without any appropriation having been made therefor. This was done in accordance with the custom which had prevailed since the enactment of the statute of 1869, providing for paying railroad debts of counties, townships, cities and towns. (Laws of 1869, p. 316.) After these payments were made by Rutz to himself he made the reports to the Governor required by the constitution and laws of the State, but in such reports he made no mention of the warrants, or either of them, or that he had paid to himself any part of the moneys collected and paid into the State treasury as the costs to the State of collection, or any mention of the fact that he had paid to himself any moneys out of the State treasury in addition to his salary and without any appropriation therefor having been made by law. No suits were commenced on either bond of Rutz and no question was raised by any Governor as to the legality of the payments until Charles S. Deneen became Governor of the State. Edward Rutz,

the principal, and John Thomas, Jacob Bunn, C. Wolf, William McCague, J. M. Darneille and George M. Brinkerhoff, who were sureties on the bonds, are each insolvent. The remaining sureties, besides Whittemore, were Samuel H. Jones and Frank W. Tracy. Jones died leaving real and personal property in the county of Sangamon worth $500,000 in excess of all indebtedness, and on January 11, 1907, his last will and testament was admitted to probate in the probate court of Sangamon county. There was no suit against Samuel H. Jones on the bond and no claim on the same was ever presented against his estate; and his property passed to his devisees by the provisions of his will. Frank W. Tracy died leaving property worth more than $200,000 in excess of all indebtedness, and his last will and testament was admitted to probate in the probate court of Sangamon county on December 19, 1903. There was no suit against him on the bond and no claim founded on it was filed against his estate, and his property passed under his will. Any claim against the estate of Samuel H. Jones or Frank W. Tracy is barred by the Statute of Limitations. The court, upon a consideration of these facts, rendered judgment for the amount of the warrants, and this appeal was prosecuted.

Appellants depend for a reversal of the judgment upon the following propositions: (1) The State is estopped, by its long acquiescence and delay, to declare a breach of the bond; (2) settlements with the taxing districts and reports to the Governor constitute stated accounts and final settlements between the State Treasurer and the taxing districts, which cannot be inquired into either by the districts or the State; (3) by uniform, practical construction of the act under which the money was collected the Treasurer was entitled to take therefrom, for himself, the amount of the warrants; (4) the statute under which the money so sued for was collected is unconstitutional; (5) by neglecting to file claims against the estates of Tracy and Jones appellants

are released as to the proportion of liability which those estates should bear. Propositions of law embodying these claims were submitted to the circuit court and were refused.

The first proposition does not state a correct rule of law as to the rights of sureties even where the State is in no manner interested, and the general rule is, that *laches,* acquiescence or unreasonable delay in the performance of duty on the part of the officers of the State is not imputable to the State when acting in its character of a sovereign. (*People* v. *Pullman Palace Car Co.* 175 Ill. 125.) Rutz was insolvent, so that any question relating to the duty owing to a surety to proceed against the principal is not involved. All that a surety has a right to require of his creditor, in the absence of any statutory provision, is, that no affirmative act shall be done that will operate to his prejudice. (*Villars* v. *Palmer,* 67 Ill. 204.) Counsel say, however, that in *People* v. *Pullman Palace Car Co. supra,* the court recognized that there are exceptions to the general rule and that there may be circumstances under which the State would be estopped. Minor municipalities, in the exercise of purely public rights, stand in the same relation to the doctrine of estoppel as the State, (*Brown* v. *Trustees of Schools,* 224 Ill. 184,) and as they have been held to be estopped by their conduct respecting public highways and streets, it is contended that delay and long acquiescence of the general public and public officers may estop the State as to public rights. It is true that where the State has committed to minor municipalities the authority to lay out, open, control and vacate or abandon public highways and streets, the doctrine of estoppel has been applied if private parties have been induced to believe that a highway or street had been abandoned, and with the acquiescence of the authorities having control of the highway or street have made improvements thereon and brought about such a condition that if those representing the public were allowed to allege something contrary to their own acts and conduct

great pecuniary loss would result. (*Lee* v. *Town of Mound Station*, 118 Ill. 3c4; *Jordan* v. *City of Chenoa*, 166 id. 530; *City of El Paso* v. *Hoagland*, 224 id. 263; *People* v. *Wieboldt*, 233 id. 572.) There is in this case no element of estoppel such as existed in the cases of highways and streets where individuals had acted upon the faith of the conduct of public officers and the public generally, or any other case where the doctrine of estoppel has been applied to the State or a municipality representing public rights. The circumstances under which the State could be estopped could only be such as would render the application of the doctrine necessary to remedy serious mischief to individuals. The delay in this case could not work an estoppel.

It is next claimed that the settlements with the taxing districts and reports to the Governor constitute stated accounts and final settlements, which cannot be inquired into. Any settlement with a taxing district relating to the money of the State would have no effect on the rights of the State. The argument that the State has settled the accounts is based upon the decision in *State of Illinois* v. *Illinois Central Railroad Co.* 246 Ill. 188, but there is such a substantial and material difference between that case and this as to necessarily lead to a different conclusion. In that case there was a contract between the railroad company and the State which required the company to furnish a semi-annual statement of accounts, and the Governor was authorized to verify and ascertain the accuracy of the accounts and to examine books and papers for that purpose. It was implied from the express provisions of the charter of the company that the Governor was not only to investigate the accounts but was to adjust and settle them, while in this case no such intention is manifest, either from the constitution or the statutes. Sections 20 and 21 of article 5 of the constitution provide that accounts shall be kept by officers of the executive department and a semi-annual report thereof shall be made to the Governor, under oath. Those

officers are required, at least ten days preceding the regular session of the General Assembly, to make reports to the Governor, who shall transmit the same to the General Assembly, and the Governor is authorized, at any time, to require information in writing, under oath, from such officers upon any subject relating to the condition, management and expenses of their offices. Chapter 130 of the Revised Statutes, in force July 1, 1873, provides that whenever the condition of the bond of the Treasurer is broken it shall be the duty of the Governor·to order the same to be prosecuted, and there is the same provision for a biennial report as that contained in the constitution. None of these provisions can be regarded as authorizing the Governor to settle the accounts of the State Treasurer, since the Governor is neither authorized nor directed to verify or approve or settle them and the reports submitted to the Governor did not disclose the illegal payments.

It is next contended that the uniform, practical construction of the act for a long period of time, under which Rutz paid the money to himself, should prevail. That question was presented in the case of *Whittemore* v. *People,* 227 Ill. 453, and it was held that the language of the constitution was clear and unambiguous and did not admit of legislative or administrative construction contrary to its plain meaning. Counsel say, however, that they now present additional reasons which ought to convince us that the decision was not correct. The only additional reason offered is, that the contemporaneous construction was not alone by the Treasurer and Auditor of Public Accounts who appropriated the money to themselves, but also by the Governor and General Assembly, whose duty it was to correct any erroneous construction of the statute by which the Treasurer took money which did not belong to him. An increase in the number of public officials who disregarded the letter of the constitution, which could not be misunder-

stood by anyone, does not demonstrate that the former decision was wrong.

The next point made is, that the statute under which the money sued for was collected is unconstitutional, and the argument is based on the decisions in *Morgan* v. *Schusselle*, 228 Ill. 106, and other cases holding that the legislature cannot delegate the right of corporate or local taxation to any other than the corporate or local authorities of the district to be taxed, and cannot compel a municipal corporation to create a debt against its will and subject the property of tax-payers to a tax for its payment without their consent. A sufficient reply to this argument would be that it does not concern the appellants. The courts do not entertain objections to the constitutionality of an act made by one whose rights have not been affected. (*People* v. *McBride*, 234 Ill. 146.) If anyone would have a right to raise objections it would be the local tax-payers, and as the money was voluntarily paid by them they could not recover it back. Although appellants have no right to raise the question, it is not to be implied that the statute is unconstitutional. Local municipalities created the debts and thereby authorized the levy of taxes to pay their obligations, and the act merely provided for a calculation of the amount necessary to be raised by such taxes and the certifying of the amounts to the proper municipal authorities.

Finally, it is claimed that neglecting to file claims against the estates of Jones and Tracy released appellants to the extent that those estates should contribute to discharge the liability on the bonds. If the claim had been filed against either of those estates it would have been paid in full, and the estate paying it would have been compelled to resort to Whittemore in his lifetime or his estate after his death. No authority for the position of counsel is cited by them, and the settled rule is, that a surety is never discharged because a cause of action, either against the principal or a surety, is barred by the Statute of Limitations.

The estate of Whittemore was not released by the fact that the Statute of Limitations barred the claim against the other estates.

The judgment is affirmed.    *Judgment affirmed.*