THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ERNEST A. HAMILL *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1913.*

1. PLEADING—*question of want of authority to bring suit must be raised at earliest moment.* Want of authority to bring a suit is a dilatory defense which must be raised at the earliest possible moment and is properly raised by a motion to dismiss, but the defense is not one which may be pleaded in bar of the action.

2. BONDS—*what is not a good defense to suit against the State Treasurer's bondsmen.* If the allegations of a declaration in a suit against bondsmen of the State Treasurer that the money drawn by him and paid to himself was levied and collected for certain specified purposes and came into his hands as State Treasurer and that he procured and countersigned the warrants and paid the several amounts to himself are not denied by any plea they are admitted to be true, and it is no defense to say that the money was not received into the State treasury by virtue of any order from the Auditor of Public Accounts.

3. SAME—*the fact that Auditor issued warrants to Treasurer does not relieve the bondsmen from liability.* The fact that the money illegally paid by a State Treasurer to himself was obtained on warrants issued by the State Auditor in due form does not render the latter solely liable and relieve the bondsmen of the State Treasurer from liability, where it is averred in the declaration, and not denied, that the State Treasurer procured the issuing of the warrants to himself, countersigned the same and took the money from the State treasury.

4. SAME—*when the bondsmen are estopped to deny that money was drawn by State Treasurer for purposes shown by warrants.* Where it is charged in the declaration, and not denied, that the money illegally drawn out by the State Treasurer was levied and collected for paying the costs of the State for the expenses connected with certain purposes, and the warrants procured and countersigned by the State Treasurer purport to be drawn upon such fund, the State Treasurer and his bondsmen are estopped to say that the State incurred no expenses for such purposes and that the money was not retained to pay them.

5. SAME—*when transaction does not relate to private·business of the State—limitations.* By levying and collecting moneys, by taxation, to pay the obligations of minor municipalities the State does not engage in private business, such as would permit the defense of the Statute of Limitations to be made in a suit by the

State to enforce the liability of bondsmen of the State Treasurer for money illegally drawn by him from the fund levied and collected for such purpose.

6. SAME—*when State is not equitably estopped to maintain an action.* The facts that the State Treasurer's accounts containing illegal payments to himself were reported to the Auditor of Public Accounts and the Governor and the reports approved, and that the Governor and General Assembly knew of such payments but did not take any action to disallow them, do not raise an equitable estoppel against the State to recover the money in an action against the State Treasurer's bondsmen. (*People* v. *Whittemore,* 253 Ill. 378, followed.)

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding.

ROGER L. FOOTE, ADOLF KRAUS, SAMUEL ALSCHULER, and CHARLES R. HOLDEN, for plaintiffs in error.

PATRICK J. LUCEY, Attorney General, and LESTER H. STRAWN, (B. F. LINCOLN, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The People of the State of Illinois, defendant in error, brought an action of debt in the municipal court of Chicago against Ernest A. Hamill, Charles L. Hutchinson and John A. King, three of the sureties on the official bond given December 20, 1892, by Rufus N. Ramsey, as State Treasurer of this State. The breaches alleged were the procuring, countersigning and paying by Ramsey of two warrants payable to himself, in violation of law. The defendants filed seventeen pleas, to which a general demurrer was sustained, and they elected to stand by their pleas. After hearing the evidence the court found the issues against the defendants, found the debt to be $500,000, assessed the plaintiff's damages at $8051.93, and ordered that on payment of the damages, costs and interest the debt should be

discharged. This suit was instituted by a writ of error to procure a reversal of the judgment.

No defense is made of several of the pleas and they will not be noticed. The third plea averred that the Governor did not order the institution of the suit, which was brought by the Attorney General, and in support of this plea counsel rely, upon section 6 of chapter 130 of the Revised Statutes, which provides that whenever the condition of the bond of the State Treasurer is broken it shall be the duty of the Governor to order the same to be prosecuted. The fourth plea is of a similar nature, but avers that the suit was not instituted by the Auditor of Public Accounts. To sustain that plea, counsel cite section 15 of chapter 15 of the Revised Statutes, which provides that the Auditor shall be deemed the proper officer to institute all suits, motions and other proceedings in law and equity in which the State is plaintiff, except in cases otherwise provided by law. If the facts alleged in these pleas were of any avail to prevent the prosecution of the suit they could not be pleaded in bar of the action. Any question of authority to bring suit is of a dilatory nature, which must be raised at the earliest opportunity and is properly raised by a motion to dismiss. *Frye* v. *County of Calhoun,* 14 Ill. 132; *Miller* v. *Metzger,* 16 id. 390; *Town of Kankakee* v. *Kankakee and Indiana Railroad Co.* 115 id. 88; *Mix* v. *People,* 116 id. 265; *Bell* v. *Farwell,* 189 id. 414.

The sixth plea alleged that the fund from which the money was drawn was never, in fact, received into the State treasury by virtue of an order from the Auditor of Public Accounts directing the Treasurer to receive it. To support this plea counsel rely on sections 7, 8 and 9 of chapter 130 of the Revised Statutes, requiring the State Treasurer to receive the revenues and public moneys of the State, and providing that persons paying money into the treasury shall first obtain from the Auditor an order directing the Treasurer to receive it. The declaration alleged that there came

into the hands of Ramsey, as Treasurer, moneys levied and collected for the purpose of paying the ordinary costs of the State and of reimbursing the State for the expense of levying, collecting and keeping account of and disbursing moneys collected to pay the principal and interest upon registered municipal bonds; that Ramsey, on March 7, 1894, procured to be issued and delivered to himself by the Auditor of Public Accounts an Auditor's warrant payable to him, the said Ramsey, as State Treasurer, for the sum of $4595.48; that said warrant was drawn against and to be paid out of said fund then in the treasury of the State; that Ramsey then and there countersigned said warrant as such Treasurer, and unlawfully paid the amount thereof to himself out of said moneys then in the treasury of the State and belonging to the State, and that the warrant was not drawn in pursuance of any appropriation made by law authorizing the drawing or payment of said warrant. The warrant and its endorsements were set out in the letters, words and figures following:

"No. 14640.                    AUDITOR'S OFFICE, ILLINOIS.
                                   *Local Bond Fund.*

                           SPRINGFIELD, *Mch. 7, 1894.*        $4595.48
         "Pay Rufus N. Ramsey State Treasurer or Order
     Forty-five hundred and ninety-five and 48/100
     Dollars.
     For expenses in receiving, disbursing and keeping
     accounts of taxes collected for payment of interest,
     etc., on registered bonds as follows, viz.:
     To the State Treasurer,
     of the State of Illinois,                    David Gore,
                                   Auditor of Public Accounts.

     (Endorsed on the back): 'Rufus N. Ramsey, State Treas.'
     (Endorsed on the face): 'State of Illinois, paid Mar.
     23, 1894, Treasurer's office.'"

The declaration alleged a further breach of the bond by procuring, countersigning and paying another warrant in the same form, from the same fund, on September 29, 1894, for $3456.45. The averments of the declaration that

moneys were levied and collected for the purpose therein stated and came into the hands of Ramsey as State Treasurer, and that he procured and countersigned the warrants and paid the several amounts to himself, were not denied by any plea and therefore were admitted to be true. It being admitted that the fund against which the warrants were drawn was received by Ramsey and was in his custody as State Treasurer, it was no defense to say that he took it without any order from the Auditor to receive it.

The seventh plea alleged that the payments of the warrants were made in good faith by Ramsey upon warrants drawn by the Auditor, as required by the statute, and counsel cite sections 10, 11 and 13 of chapter 130 of the Revised Statutes, which prohibit the Treasurer from paying out any money except upon the warrant of the Auditor, and require him to countersign any warrant presented to him and to cancel the warrant when paid. It is argued that if the Auditor drew the warrants, regular on their face, and Ramsey paid them, the Auditor alone should be answerable for their illegality and the sureties of the Treasurer should be protected. The declaration alleged that Ramsey procured the issuing of the warrants to himself, countersigned them and took the money from the State treasury, and it was no defense to the charge thus made that the Auditor gave him the warrants which he unlawfully obtained.

The eighth plea alleged that in collecting and disbursing the moneys for the payment of registered municipal bonds the State did not incur any expense; and the ninth plea alleged that the State did not retain out of the registered bond fund collected the ordinary costs of collection and disbursement of the fund. The plea did not deny that moneys were levied and collected for the purposes for which the warrants were drawn and were in the hands of Ramsey as State Treasurer, nor that the warrants were drawn upon such a fund and paid. Ramsey and his sureties were estopped from saying that the moneys which he took did not

represent actual expenses of the State or were not retained
to pay such expenses.

The tenth and fourteenth pleas alleged the making by
Ramsey of his monthly reports to the Auditor of the
moneys received and paid out during the month, under
section 14 of chapter 130 of the Revised Statutes, and the
reports made under section 15 of the same chapter to the
Governor and submitted to the General Assembly, and it
is contended that these pleas, alleging that the reports were
received and retained without objection, constituted stated
accounts and settlements, which released and discharged
Ramsey and his sureties. That argument was made and
answered in *People* v. *Whittemore,* 253 Ill. 378, where the
substantial and material difference between the reports of
the State Treasurer and the accounts considered in *State
of Illinois* v. *Illinois Central Railroad Co.* 246 Ill. 188, was
pointed out.

The fifteenth plea set up the five-year Statute of Lim-
itations, and the sixteenth set up the ten-year statute as a
defense. It is conceded that ordinary statutes of limitation
cannot be pleaded in bar of an action in favor of the State.
It is insisted that these pleas were good because they related
to private business in which the State had engaged. The
State did not engage in any private collection business by
levying and collecting moneys by taxation to pay the obliga-
tions of minor municipalities or governmental subdivisions
of the State, but was in the exercise of powers of gov-
ernment.

The thirteenth and seventeenth pleas alleged the mak-
ing of monthly reports to the Auditor and the reports to
the Governor required by law, which set forth the payment
of the warrants, the approval of the reports by the Gover-
nor, and the knowledge and consent of the Governor and
General Assembly to the payments,-the death of some of
the sureties after the alleged liability arose and the final
settlement of their estates, and that the sureties on the bond

relied upon the action of the Governor and General Assembly. The seventeenth plea also alleged that the General Assembly appropriated to the Treasurer for the years 1907, 1908, 1909 and 1910, $4000 for each year to pay the expense of collecting and disbursing the registered bond fund. The argument is that the State ought to be estopped from maintaining any action on account of the hardship that would result, but there is no substantial difference between the conditions recited and those stated in *People* v. *Whittemore, supra,* where it was held that an equitable estoppel did not arise. No affirmative act of the Governor or General Assembly was stated in the pleas, and neither had any authority to bind the State by the approval of an account containing unlawful charges. The facts alleged amount to mere inaction on the part of public officers who might have taken action, and there is no basis in the facts pleaded for an equitable estoppel.

The court did not err in sustaining the demurrer. The judgment is affirmed.          '          *Judgment affirmed.*