[No. 11518.  *En Banc.*  January 8, 1915.]

## A. J. GUSTAVESON, *Respondent*, v. GEORGE DWYER, *Appellant.*[1]

LIMITATION OF ACTIONS—AGAINST COUNTY—TAX TITLE HELD BY COUNTY—ADVERSE POSSESSION—ESTOPPEL.  Property purchased by a county at a general tax foreclosure sale for want of other purchasers, and held in trust for the state, county, and other political subdivisions entitled to an apportionment of the tax on a resale, is taken and held by the county in its governmental capacity, as distinguished from its proprietary capacity, in the exercise of the sovereign power of taxation; hence the statute of limitations does not run in favor of one in the adverse possession of the land while the title was held by the county; nor would there be any element of estoppel, where the adverse claimant had not made improvements or paid any taxes (GOSE and CHADWICK, JJ., dissenting).

Appeal from a judgment of the superior court for Pierce county, Card, J., entered April 28, 1913, upon findings in favor of the plaintiff, in an action to quiet title.  Affirmed.

*James Garvey, Guy E. Kelly,* and *Thomas MacMahon,* for appellant.

*A. O. Burmeister* and *Gordon & Remann,* for respondent.

*The Attorney General, Scott Z. Henderson, Assistant,* and *L. L. Thompson, amici curiae.*

### ON REHEARING.

PARKER, J.—This case is before us upon rehearing.  It was decided in respondent's favor on February 28th last by Department Two of the court, upon the theory that the adverse possession upon which appellant rests his claim to the land involved did not sustain his claim of title because ten years had not elapsed since title to the land was in the county by virtue of the county having purchased it at tax sale for want of another purchaser, though appellant may have been in actual possession of the land since the purchase thereof by the

[1]Reported in 145 Pac. 458.

county at tax sale more than ten years prior to the commencement of this action; and that the county purchased and held title in trust for the state as well as for the county and municipalities which were entitled to share in the tax for which the county purchased the land; thus preventing the statute of limitation from running in·favor of appellant while title to the land was in the county. *Gustaveson v. Dwyer*, 78 Wash. 336, 139 Pac. 194.

In the Department decision, certain sections of our revenue statutes were noticed, from which the conclusion was drawn that, upon the purchase of the land by the county, the proceeds of sale thereof to be thereafter made by the county were by law required to be distributed to the state as well as the municipalities entitled to the tax for which the county was by law compelled to purchase the land for want of another purchaser. The trust relation which the Department decision assumed existed between the county and the state, upon the purchase of the land by the county, was rested upon these provisions of our revenue·statutes alone; and upon this theory, the state being held to be a beneficiary having an interest in the land, the adverse possession of appellant was of no avail to him while the land was so held by the county, because the statute of limitations does not run against the state. Certain other sections of the revenue statutes are now called to our attention which lend some support to the present contention of counsel for appellant that this view of the statute entertained by Department Two was erroneous. However this may be, further consideration has led us to the conclusion that there is a broader view of the relation of the state to the title of the land thus purchased by the county, in pursuance of the statute at tax sale for want of another purchaser, which must control the question of adverse possession here presented.

While our general statute of limitations applies to actions by or for the benefit of counties and other municipalities (Rem. & Bal. Code, § 167; P. C. 81 § 79), it has been held

that the statute does not apply as against a municipality so as to permit the acquisition of title by adverse possession to a portion of a street within the municipality. *West Seattle v. West Seattle Land & Improvement Co.*, 38 Wash. 359, 80 Pac. 549.

This holding rests upon the theory that such property is held by the municipality, or rather, controlled by it, in a governmental capacity for public purposes. And to hold the general statute of limitations applicable to actions involving title to property so held, would be to hold that such statute runs against the state. The rule touching the inapplicability of a general statute of limitations in such cases, although such statute by its terms be applicable to municipalities as well as private individuals, is stated in 19 Am. & Eng. Ency. Law (2d ed.), 191, as follows:

"The better rule seems to be that where a municipality seeks to assert rights which are of a public nature and such as pertain purely to governmental affairs, the exemption in favor of sovereignty applies and the statute of limitations will not constitute a bar unless it is expressly so provided. But in all other respects, counties, cities and other municipal subdivisions are governed by the statute as fully and to the same extent as individuals."

Upon this principle, the decisions of this court in *O'Brien v. Wilson*, 51 Wash. 52, 97 Pac. 1115, and *State v. Seattle*, 57 Wash. 602, 107 Pac. 827, 27 L. R. A. (N. S.) 1188, are rested, although those decisions involved the question of the general statute of limitations running against the state direct, at a time when the statute was in terms applicable to the state. It was there held that adverse possession could not impair the title of the state to school and university lands, upon the theory that such lands were held by the state for a specific public purpose and not in a mere proprietary capacity.

We regard the vital question here to be, does the county hold land acquired by purchase at tax sale for want of an-

other purchaser in a governmental capacity as distinguished from a proprietary capacity; since it is plain the statute would not run against the county in the former instance but would in the latter.

Looking to the power in the exercise of which the county's title to this land originated, we are constrained to hold that the county did not acquire or hold the land in a proprietary capacity, but in a governmental capacity. The land is not acquired by the county voluntarily but in the exercise of a mandatory duty prescribed by the state and in the exercise of the sovereign power of taxation. Rem. & Bal. Code, § 9268 (P. C. 501 § 265). It acts, in effect, as the agent of the sovereign, even though its action is largely for the benefit of the people of the county and the municipalities entitled to share in the tax for which the county is compelled to purchase the land for want of another purchaser. By the greater weight of authority, it is held that a general statute of limitations, though it may be in terms applicable to counties and other municipalities, will not bar the right of such municipality to enforce the collection of taxes. These holdings rest upon a principle which we regard as controlling here, although no decision has come to our notice dealing with the application of a statute of limitation to the exact situation here involved. In *Port Townsend v. Eisenbeis*, 28 Wash. 533, 68 Pac. 1045, Judge Anders, speaking for the court, said:

"An action to recover a tax is an action to enforce a public right. And it has been held that the statute of limitations does not affect such actions, although it may be applicable to actions to enforce private rights. *Greenwood v. LaSalle*, 137 Ill. 225 (26 N. E. 1089); Black, Tax Titles, § 164; see also, *Sims v. Frankfort*, 79 Ind. 452, and 2 Dillon, Municipal Corporations, § 673."

That decision, however, was rested largely upon certain provisions of the special charter of Port Townsend.

In *Osawatomie v. Board of Com'rs Miami County,* 78 Kan. 270, 96 Pac. 670, 130 Am. St. 369, there was involved a claim of the city against the county for funds, the proceeds of taxes, which had been collected by the county for the city and not accounted for. The county invoked the general statute of limitations which apparently by its terms was applicable to counties and cities in that state. Disposing of this contention in holding that such statute had no application, Justice Mason, speaking for the court, said:

"Inasmuch as the city exists in part as an agency of the state for general governmental purposes, and its maintenance depends upon its power to levy and collect taxes, it might be argued that the state itself, or the general public, has an interest in protecting the exercise of that power. But the same argument might apply, although with less force, to the prosecution of any money demand, upon the ground that the purpose of enforcing it is to aid in meeting the expenses of maintaining the municipality. We think the more vital consideration has relation to the character of the power in exercise of which the demand originates. The power of taxation is an essential attribute of sovereignty. This is true no less of taxes levied by minor political divisions than of those directly imposed by the state. (27 A. & E. Encycl. of L. 620.) No statute of limitation should apply to any step in the exercise of that power unless a legislative intention that it should do so is expressly stated or appears by the clearest implication."

In *Greenwood v. Town of LaSalle,* 137 Ill. 225, 26 N. E. 1089, an action to recover taxes where the general statute of limitation was invoked as a defense, which by its terms was applicable to cities and towns, Justice Wilkin, speaking for the court, said:

"The question to be determined in this case is, therefore, does appellee here seek to enforce a private right. This question, we think, must be decided in the negative. A town, under our township organization system, is but a civil division of a county, and exists as a municipal corporation merely for the purposes of carrying on the state government. It can only levy and collect taxes for the purpose of carrying on that

subdivision of such government.   It must be admitted that town taxes may be levied for purposes in which the public, generally, are directly interested, such as 'constructing or repairing roads, bridges or causeways' within the town. (Rev. Stat. chap. 139, art. 4, sec. 40; *City of Alton v. Illinois Transportation Co.*, 12 Ill. 38.)   Other improvements may also be lawfully paid for out of a town tax, in which the public at large have as much interest as those residing within the boundaries of the township.   We entertain no doubt that the right here sought to be enforced is of such a public nature that no statute of limitations could be interposed against it."

In *Wasteney v. Schott*, 58 Ohio St. 410, 51 N. E. 34, where a general statute of limitation was invoked in defense of an action to collect taxes, the court in holding such statute not applicable to such cases observed:

"When the action, though brought in the name of the state, is prosecuted for the enforcement of some private or individual right, and the state has no substantial interest in the litigation, the plea of the statute may be interposed.   On the other hand, if the state is the real party in interest, the plea of the statute is not available though the action be not prosecuted in its name; and actions under section 2859, of the Revised Statutes, for the recovery of personal taxes, are, we think, of that character, and not subject to the bar of the statute, notwithstanding they are required to be brought in the name of the county treasurer.   Revenues are essential to the maintenance of the state and the execution of its governmental functions.   Taxation is a recognized constitutional and lawful means of raising such revenues for most, if not all public needs; and the courts will take notice that general taxes levied by the state directly, or through local agencies to which it has delegated that power, constitute a source of revenue for use in the due performance of the functions of the state government.   Whether voluntarily paid, or collected by suit, they go partly to the general funds of the state for its disbursement in the administration of public affairs, and are in part disbursed in the due course of local administration by officers exercising the delegated powers of the state, deemed necessary and proper for that purpose.   In the latter case, as well as the former, the fund belongs to the state's revenues, and the disbursement is for the public benefit, al-

though local advantages may also result. Through county, township, municipal, and other organizations, they are paid out in the administration of public justice, the maintenance of the public order and security, the support of the public schools, and other purposes of a public nature pertaining to the state government. Hence, for all such taxes levied on real property the lien thereon provided by statute is declared to be in favor of the state; and while it was probably deemed impracticable to create a lien on personal property for the taxes laid against it, the fund derived from them is expended in common with that arising from real estate taxes, and for the same purposes."

In *Hagerman v. Territory*, 11 N. M. 156, 66 Pac. 526, the action was brought by the county authorities to recover delinquent taxes, the statute expressly declaring such taxes sought to be thus collected, to be the property of the county. In holding against the contention that the general statute of limitations was a defense, the court said:

"It is further insisted by the appellant that the general principle that the ordinary statute of limitations cannot be interposed to defeat a claim of the government, has no application to the case at bar, as the government, i. e., the Territory of New Mexico has no interest in the taxes delinquent July 1, 1895, here involved, the Legislature having provided (Section 21, chap. 60, Session Laws 1897; section 4184, C. L. of N. M. 1897) that 'all delinquent taxes due the Territory on the first day of July, 1895, are hereby declared to be the property of the respective counties in which the same are assessed, and when collected, shall be paid to the general county fund of the several counties of the Territory.' We think, however, that the principle has application to this case. Under our system of government a county is a civil subdivision of the Territory, and exists as a municipal corporation merely for the purpose of carrying on the territorial government; and it is well settled that the plea of the statute of limitations is no defense to those actions by such corporation involving public rights, such as taxation, unless the statute expressly so provides."

It is apparent from the doctrine of these authorities that a general statute of limitations has no application, whether the

tax sought to be collected is to become the property of the state and payable directly into the state treasury, or whether it is to become the property of the particular county or municipality and payable into the municipal treasury to be expended for municipal purposes. In either case the tax has been imposed and collected for the express purpose of carrying on the functions of government. Among additional authority supporting this view, we note the following: *Delta County v. Blackburn*, 100 Tex. 51, 93 S. W. 419; *Brink v. Dann*, 33 S. D. 81, 144 N. W. 734; *Simplot v. Chicago, M. & St. P. R. Co.*, 16 Fed. 350; *Board of Supervisors of Logan County v. City of Lincoln*, 81 Ill. 156; *People v. Hamill*, 259 Ill. 506, 102 N. E. 1052.

Like the Kansas court in *Osawatomie v. Board of Com'rs of Miami County*, above quoted from, we think the vital question here has relation to the character of the power in the exercise of which the county acquired the land at tax sale and thereafter held it. The case before us, it is true, does not involve the question of the bar of the statute of limitation as between the original owner of the land and the county; but we are unable to see that the acquiring the land and holding it thereafter is any less the exercise of a right emanating in the power of taxation than is the levy and imposition of the tax in the first instance. All of the rights of the county here involved are traceable to and rest in the sovereign power of taxation. It is not a proprietary right or power exercised by the county in either instance; but purely governmental, looking to the administration of governmental functions. We are of the opinion that the general statute of limitations, though by its terms made applicable to counties, does not run against the county in favor of an adverse possessor of the land while the title of the land rests in the county.

These conclusions may seem in conflict with our decision in *Franklin County v. Carstens*, 68 Wash. 176, 122 Pac. 999. Our views here expressed are plainly out of harmony

with the expression found at page 180 of that decision, as follows:

"The property was held by the appellant in a proprietary capacity, as distinguished from the governmental or *quasi* governmental capacity."

That case involved Franklin county's claim to land acquired as this land was acquired in Pierce county. The statute of limitations was not there involved but the county was held to have lost its and the public's right to the land by estoppel, growing out of its questionable tax title and a compromise with the original owner allowing him to redeem the land. We think the ultimate conclusion of the court in that case would necessarily have been the same whether the land was regarded as being held by the county either in a proprietary or governmental capacity. That decision contains no discussion or citation of authority bearing upon the question of whether land so acquired by a county is held in a proprietary or governmental capacity. The fact that public streets may be lost to public use by vacation seems to furnish room for the working of estoppel as against a municipality affecting the loss of a street or portion thereof to the public, notwithstanding a street is held and controlled by a municipality in a purely governmental capacity. In *West Seattle v. West Seattle Land & Imp. Co., supra,* the court rested its decision in favor of the city exclusively upon the inapplicability of the statute of limitations to such cases, pointing out that there was no element of estoppel affecting the right of the city or the public in that case, leaving the inference that the rights of the public in a street might be lost by estoppel. In *Spokane Street R. Co. v. Spokane Falls,* 6 Wash. 521, 33 Pac. 1072, the railway company was held to have acquired a franchise right in the street by estoppel growing out of acts of the city. This seems to be a recognition of the rule announced by a number of the courts, that would call for the ultimate conclusion reached by us in *Franklin County v. Carstens,* regardless of whether land acquired at tax sale by a county

for want of other bidders is thereafter held by the county in a proprietary or governmental capacity. Hence, our decision in that case would have been the same whatever our views may then have been upon that question. We adhere to the conclusion there reached, but are of the opinion that, in so far as the language of the decision announces that the land was held by the county in its proprietary capacity, it should be overruled in the light of the authorities above noticed.

There is no element of estoppel here involved. While the land was held by the county by virtue of its purchase at tax sale appellant made no improvements thereon adding to its value in the least; nor did the county during that period levy any tax upon the land; nor has appellant ever at any time paid any taxes thereon.

We adhere to the final result reached in the Department opinion of February 28. The judgment of the superior court is therefore affirmed.

Crow, C. J., Ellis, Morris, Mount, and Main, JJ., concur.

Gose and Chadwick, JJ. (dissenting)—We cannot acquiesce in the view that the immunity which protects taxes from the operation of the statute of limitations extends to property acquired by the county at a tax sale. The sale cancels and satisfies the taxes, penalties, interest and costs. The statute expressly so provides. The statute declares that the county acquires title to the property "as absolutely as if purchased by an individual." Rem. & Bal. Code, § 9268 (P. C. 501 § 265). "No claims shall ever be allowed against the county from any municipality, school district, road district, or other taxing district for taxes levied on property acquired by the county by tax deed under the provisions of this act, but all taxes shall at the time of deeding said property be thereby cancelled." Rem. & Bal. Code, § 9271 (P. C. 501 § 271). After a tax deed is issued to the county, the

property may be sold by the county treasurer upon the order of the board of county commissioners at public sale to the highest bidder.    Rem. & Bal. Code, § 9273.    The crucial question is, Does the county hold land which it purchases at a tax sale in a governmental capacity or a proprietary capacity?   We think the true test of the capacity in which the municipality holds property is the use to which the property is to be devoted.    The property in question was not devoted to a public purpose nor was it essential to the exercise of municipal functions.    It is true that the county took the land in lieu of the taxes, but when its title became complete it was subject to sale the same as any other property held in a proprietary capacity.    In the last analysis, a municipality acquires title to all its property through the exercise of the sovereign power of taxation.    Indeed, it is only by the exercise of the taxing power that it can acquire property or procure funds with which to perform its governmental functions.    The tools and implements which the city or county purchases to be used in constructing and repairing roads and bridges are purchased with money derived through the taxing power. Are they held in a governmental capacity?   The courts of the country are agreed that municipal corporations hold property and exercise functions in a dual capacity, viz., governmental and proprietary.    The line of demarcation must necessarily be drawn somewhere.    In respect to property, we think the test should be the use to which the property is to be devoted; that is, Is it to be used for the purpose of carrying on its governmental functions?   If it is to be so used, the statute of limitations does not apply; otherwise, the plea of the statute may be invoked.

We therefore dissent.