THE CITY OF EDMONDS, *Respondent,* v. KENNETH E. WILLIAMS, SR., ET AL, *Appellants.*

*William W. Brown* and *Charles D. Brown,* for appellants.

*Steven J. Gordon,* for respondent.

SCHUMACHER, J.*—Kenneth Williams, Sr., and Jane Doe Williams (Williams), appeal from an order of summary judgment establishing an easement over Williams' property. We affirm.

Williams and the City of Edmonds (City) own adjacent parcels of real property. For purposes of this opinion, the City's parcel is referred to as parcel A; Williams' parcel is referred to as parcel B. Both parcels A and B were owned by Myron and Ruth Hamlin (Hamlin) until July 30, 1969. On that date, Hamlin conveyed parcel A to Neil and Mildred Matson. The parcel A deed included "an easement for ingress, egress and utilities over, under and upon" parcel B. On the same date, Hamlin conveyed parcel B to Pacific Northwest Realty, Inc. The parcel B deed did not indicate that an easement burdened the property. The parcel A deed was recorded prior to the parcel B deed.

Pacific Northwest Realty conveyed parcel B to Williams' daughter in 1970, without reference to any easement burdening the property. Williams acquired title from his daughter in the same year and constructed a fence around the boundaries of parcel B, which fence has remained since.

The City obtained a judgment of foreclosure against parcel A for unpaid LID assessments in 1973, and in 1975 received a foreclosure deed to parcel A. No mention was made of the easement rights over parcel B in the foreclosure proceeding and Williams was not directly notified of the pending foreclosure.

---

*Judge John W. Schumacher is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

The City became aware that Williams' fence blocked its easement over parcel B and, in 1987, filed suit to quiet title in its easement and to enjoin Williams from obstructing use of the easement. After considering motions by the City and Williams, the trial court entered an order of summary judgment for the City. Williams appealed, asking this court to find that he adversely possessed the City's easement and that the City does not have valid title to parcel A.

## ADVERSE POSSESSION

Williams first contends that he adversely possessed the City's easement over parcel B. Williams' claimed adverse use consists of having used the easement area for approximately 17 years, and having maintained a fence around the entire parcel B perimeter for the same period.

■ An easement can be extinguished through adverse use by the owner of the servient estate. *Howell v. King Cy.*, 16 Wn.2d 557, 559–60, 134 P.2d 80, 150 A.L.R. 640 (1943); *Lewis v. Seattle*, 174 Wash. 219, 223–25, 24 P.2d 427, 27 P.2d 1119 (1933). Generally, whether an easement is extinguished by adverse use is determined by applying the principles that govern acquisition of title by adverse possession and acquisition of an easement by prescription. Annot., *Loss of Private Easement by Nonuser or Adverse Possession*, 25 A.L.R.2d 1265, § 2, at 1274–75 (1952); 1 Washington State Bar Ass'n, *Real Property Deskbook* § 15.48 (2d ed. 1986). Thus, the principle that adverse possession cannot be acquired against property held by a municipality in its governmental capacity applies to extinguishing easements by adverse use, as well as to acquiring property interests through adverse use. *See generally Commercial Waterway Dist. 1 v. Permanente Cement Co.*, 61 Wn.2d 509, 512, 379 P.2d 178 (1963); *West Seattle v. West Seattle Land & Imp. Co.*, 38 Wash. 359, 363–64, 80 P. 549 (1905). This limitation upon adverse possession derives from the rule that the adverse possession statute cannot run against the State. RCW 4.16.160; *see also Commercial Waterway*, 61 Wn.2d at 512.

The question here is whether the City held parcel A and the access easement across Williams' property in its governmental capacity, thereby precluding Williams from adversely possessing the easement. We hold that under *Gustaveson v. Dwyer,* 83 Wash. 303, 145 P. 458 (1915), the City's property interest was held in its governmental capacity.

In *Gustaveson,* the court ruled that property acquired by a governmental body by purchase at a tax sale is held for public purposes and therefore in its governmental capacity. The court reasoned that because actions to enforce taxes are necessary to obtain revenue for maintaining governmental functions, property acquired in a tax foreclosure action is held in a governmental capacity. It is irrelevant whether the State, a municipality, or another governmental body initiated the revenue collection action at issue, because a

> statute of limitations [including an adverse possession statute] has no application, whether the tax sought to be collected is to become the property of the State and payable directly into the state treasury, or whether it is to become the property of the particular county or municipality and payable into the municipal treasury to be expended for municipal purposes. In either case the tax has been imposed and collected for the express purpose of carrying on the functions of government.

*Gustaveson,* 83 Wash. at 309–10.

On appeal, Williams attempts to distinguish *Gustaveson* as involving a tax sale rather than an LID assessment foreclosure. Williams also attacks *Gustaveson*'s continuing validity. Neither argument is persuasive.

Williams' attempt to distinguish *Gustaveson* ignores the real focus of a governmental capacity inquiry: whether the revenue collection procedure at issue was imposed to raise revenue for carrying on governmental functions. An LID assessment clearly serves this purpose. Const. art. 7, § 9, RCW 35.43, and RCW 36.94.220 *et seq.* authorize local governments to use LID assessments to finance and construct vital public improvements, such as streets, water

systems, and sewers. An LID can be established *only* to serve *public* interest or convenience. RCW 35.43.040; *see also* RCW 36.94.900 (sewerage and water system LID special assessments are for a public purpose).

Williams' attack on *Gustaveson*'s validity is also unpersuasive. The cases upon which Williams relies, *Kesinger v. Logan,* 51 Wn. App. 914, 756 P.2d 752, *review granted,* 111 Wn.2d 1018 (1988)[†] and *Sisson v. Koelle,* 10 Wn. App. 746, 520 P.2d 1380 (1974),[1] are inapposite, as neither involves property acquired in tax or LID foreclosures.

■■ Furthermore, Williams did not make a sufficient showing of adverse use to establish adverse possession of the City's easement. Termination of easements is disfavored under the law. 28 C.J.S. *Easements* § 52 (1941). Thus, a permanent easement created by grant or reservation is not lost by mere nonuse. *Thompson v. Smith,* 59 Wn.2d 397, 407, 367 P.2d 798 (1962). Nor is an easement lost by prescription during a period of nonuse, unless the adverse use is clearly inconsistent with the future use of the easement. The owner of the servient estate "has the right to use his land for purposes not inconsistent with its ultimate use for the reserved purpose". *Thompson,* 59 Wn.2d at 407. In *Thompson,* the court held that to construct a concrete foundation slab for a small building within an unopened road right of way was not an inconsistent use. In the same vein, it is not an inconsistent use to erect a fence across an unused express easement.

> [W]here an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may *fence his land* and such use will not be deemed adverse to the existence of the easement until such time as (1) the need for the right of way arises, (2) a demand is made by the owner of the dominant tenement that the

---

[†]Reporter's note: Affirmed in 113 Wn.2d at 320 (1989).

[1]In both *Kesinger* and *Sisson,* the court looked to the use made of the property, rather than to the means by which the property was acquired, to decide whether the subject property had been held in a governmental capacity.

easement be opened and (3) the owner of the servient tenement refuses to do so.

(Italics ours.) *Castle Assocs. v. Schwartz,* 63 A.D.2d 481, 490, 407 N.Y.S.2d 717, 723 (1978). *Accord,* Annot., *supra,* 25 A.L.R.2d 1265, § 26, at 1325–30.

In this case the record does not reflect that any effort was made to use the parcel A access easement from the time the easement was created in 1969 until well after the City acquired parcel A. The only use of the easement area by Williams that could be considered obstructive to the easement was his construction and maintenance of a fence. This is not a sufficiently inconsistent use of the easement area to constitute adverse possession.

### VALIDITY OF CITY'S TITLE

■ Williams also contends that the City's title to parcel A and the easement over parcel B is void because the City notified Matson of the foreclosure action by a procedure subsequently found to violate due process. *See Brower v. Wells,* 103 Wn.2d 96, 690 P.2d 1144 (1984) (notice by posting and publication of foreclosure proceedings violates due process). Without making any determination concerning the City's notice procedure, we reject this contention on the ground that Williams has no standing to challenge the manner by which the City acquired title. Only the owner of the land subject to foreclosure may object to improper notice of an LID foreclosure. *Everett v. Morgan,* 133 Wash. 225, 228, 233 P. 317, 237 P. 508 (1925). "Without some interest in the land, [a complainant] has no right to have a judicial inquiry into the title which another takes under a tax sale." *Sasse v. King Cy.,* 196 Wash. 242, 250, 82 P.2d 536 (1938).

Williams also uses a bona fide purchaser argument to attack the City's title. This argument is irrelevant and without merit. "It is a well established principle that a subsequent taker from a good faith purchaser without notice takes all the rights of his grantor." *Hendricks v. Lake,* 12 Wn. App. 15, 23, 528 P.2d 491 (1974).

The order of the trial court is affirmed.

SWANSON and WINSOR, JJ., concur.