# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| MARK F. and LINDA H. BRESSLER, husband and wife, | ) ) ) | No. 72027-9-I |
| Appellants, | ) ) | |
| v. | ) ) | |
| KEVIN F. and LINDA SULLIVAN, husband and wife, | ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: June 29, 2015 |

VERELLEN, A.C.J. — The Bresslers brought a quiet title action against their neighbors, the Sullivans, to declare both lots free of a shared boat launch easement. After a bench trial, the trial court found that the Sullivans abandoned the easement. But the trial court also concluded that it would not be an undue hardship on the Bresslers to allow the Sullivans to reinstate the easement if the Sullivans met certain conditions. The Bresslers appeal the trial court's order permitting the Sullivans to reinstate the abandoned easement. Because there is no authority to order reinstatement of an easement that has been abandoned if reinstatement would not be an undue hardship, the trial court's ruling was in error. Accordingly, we reverse in part.

## FACTS

On July 24, 2006, the Bresslers and the Sullivans each bought adjoining low-bank waterfront homes on Whidbey Island in Island County, Washington. Both lots

were encumbered with a mutual easement over a five-foot strip on either side of most of their common boundary. Additionally, the Bresslers' lot was encumbered with an easement for the benefit of the Sullivans' lot, allowing access and use of a boat ramp located on the Bresslers' lot. Stone pavers were installed along the corridor between the two houses following the intended easement path between the two lots and across the Bresslers' lot down to the boat launch. Both easements were recorded in a "Declaration for Joint Use of a Boat Launch" on July 24, 2006.

The Bresslers used their property for weekends and vacations. The Sullivans did not live on the property until 2009. For a variety of reasons, the neighbors did not get along.

In January 2009, after the Sullivans moved on to the property, Ms. Sullivan installed a mailbox in the middle of the easement. At Mr. Bressler's request, she agreed to move it, but did not do so until after this lawsuit was filed. At the end of August 2009, Ms. Sullivan decided to put up a fence. When reminded by Mr. Bressler about the easement, she had a chain link fence installed five feet from the midpoint of the easement.

In September 2011, the Sullivans purchased a boat and asked their attorney about how to begin using the easement for the boat launch. The Sullivans also made arrangements to install a sliding gate in their fence so they could move their boat from their property to the boat launch. When their attorney mistakenly informed them that there was no easement, Ms. Sullivan decided to move the fence. She had workers begin erecting a fence with six-foot high wooden posts along the property line in the middle of the easement.

2

When the Bresslers objected to the fence, the Sullivans referred them to their attorney. The Bresslers then hired their own attorney, who contacted the Sullivans' attorney and demanded that the fence and mailbox be removed from the easement by November 4, 2011, or alternatively, that the Bresslers would agree to extinguish the easement. When the Sullivans' attorney confirmed to the Sullivans that the easement in fact existed, the Sullivans advised their attorney not to respond to the Bresslers' attorney. Ms. Sullivan then authorized the fence contractors to continue with installation of the fence within the easement.

Eventually, the Sullivans' attorney told the Bresslers that the Sullivans wished to extinguish the easement. The Bresslers' attorney prepared an extinguishment agreement. The Sullivans told their attorney that they agreed to sign the papers to extinguish the easement.

Meanwhile, the Sullivans were considering constructing a boat launch on their own property if the property seller or the title company would pay for it. But once the existence of the easement was confirmed, the Sullivans' attorney advised them that they could not recoup costs of installing a boat launch from the property owner, leaving only the title company as a possible source. The Sullivans' attorney later e-mailed them that they were unable to recoup such costs from the title company and it was unlikely the title company would reimburse them for their attorney fees. The Sullivans did not respond. Their attorney e-mailed them again to ask when they could sign the easement extinguishment agreement. On November 30, 2011, the Sullivans responded they were unavailable until mid-December.

The Sullivans' attorney then sought attorney fees from the title company for failing to include the easement in the title policy. On December 19, the Sullivans' attorney notified them that the title company was only willing to pay $3,951 in attorney fees to settle their claim. The next day, the Sullivans informed their attorney and the Bresslers that they would not sign the easement extinguishment agreement.

The parties proceeded to mediation. Following mediation, the Sullivans moved most of the fence back to its original configuration, five feet from the middle of the easement. But they left a twelve-foot portion of the fence inside the easement where the swinging gate was installed. The Bresslers' attorney advised the Sullivans' attorney that this configuration blocked the easement, but the Sullivans did not take any action.

After the unsuccessful mediation, the Bresslers filed this lawsuit, seeking to quiet title to both lots free of the easement declaration. The Bresslers claimed that the Sullivans abandoned the easement, and that, in the alternative, the Sullivans were equitably estopped from denying the abandonment.

After the lawsuit was filed, the Sullivans began using the boat ramp, but did not comply with the terms of the easement. The easement only permitted egress and ingress for the purpose of launching boats, but the Sullivans often tied their boat up on the Bresslers' tidelands or stored it on the boat ramp. The Sullivans also allowed third parties to use the easement to remove driftwood from the beach below the launch without the Bresslers' consent. Additionally, the Sullivans expanded their landscaping further into the easement area.

After a bench trial, the trial court found that the Sullivans abandoned the easement. But the court also concluded that the Bresslers would not suffer undue

hardship by reinstatement of the easement if the Sullivans were required to move the encumbrances that encroached on the easement and if they paid the Bresslers' legal expenses. The court then entered a "Final Judgment and Conditional Decree Quieting Title" allowing the Sullivans 20 days to comply with the conditions for reinstating the easement.

The Bresslers appeal that portion of the trial court's judgment allowing reinstatement of the easement.

DISCUSSION

The Bresslers contend that the trial court's order allowing reinstatement of an abandoned easement is without legal basis. We agree.

"When a trial court has weighed the evidence in a bench trial, appellate review is limited to determining whether substantial evidence supports its findings of fact and, if so, whether the findings support the trial court's conclusions of law."[1] Unchallenged findings are verities on appeal.[2] Conclusions of law are reviewed de novo.[3]

An easement may be extinguished by operation of the legal doctrines of abandonment and equitable estoppel.[4] Once extinguished, an easement ceases to

---

[1] Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555, 132 P.3d 789 (2006).

[2] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

[3] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

[4] Heg v. Alldredge, 157 Wn.2d 154, 161, 166, 137 P.3d 9 (2006); Humphrey v. Jenks, 61 Wn.2d 565, 567-68, 379 P.2d 366 (1963). An easement may also be extinguished under the legal doctrines of merger, Radovich v. Nuzhat, 104 Wn. App. 800, 805, 16 P.3d 687 (2001), and adverse possession, Edmonds v. Williams, 54 Wn. App. 632, 634, 774 P.2d 1241 (1989).

exist and may only be recreated by creation of a new easement.[5]

Extinguishing an easement through abandonment requires a showing of an intent to abandon.[6] "Acts evidencing abandonment of an easement must be unequivocal and decisive and inconsistent with the continued existence of the easement."[7] Extinguishing an easement based on equitable estoppel requires a showing that the easement holder (1) engaged in conduct that was inconsistent with his or her later claim, (2) the other party relied on the conduct, and (3) the other party would suffer injury if the easement holder were allowed to contradict or repudiate the earlier inconsistent conduct.[8]

Here, the trial court concluded that the easement was abandoned:

> The court has found that the Sullivans' installation of a fence along the property line was unequivocal, decisive, and inconsistent with the continued existence of the easement and that, at that point, the Sullivans abandoned the easement. The Sullivans' actions in finishing the fence installation after receiving verification that the easement had been recorded were intentional. Their continued encroachments into the easement thereafter were also unequivocal and decisive and inconsistent with the continued existence of the easement.[9]

But the court also went on to consider whether the Sullivans could reinstate the easement after abandoning it:

---

[5] Radovich, 104 Wn. App. at 806. To create an easement, it must be in writing or an oral agreement to convey an interest in property if a party can establish part performance and the terms to which the parties agreed. Berg v. Ting, 125 Wn.2d 544, 556, 886 P.2d 564 (1995); RCW 64.04.010 ("every contract creating or evidencing any encumbrance upon real estate, shall be by deed.").

[6] Heg, 157 Wn.2d at 161.

[7] Id.

[8] Id. at 165 (quoting Pub. Util. Dist. No. 1 of Klickitat County v. Walbrook Ins. Co., 115 Wn.2d 339, 347, 797 P.2d 504 (1990)).

[9] CP at 33 (citing Heg, 157 Wash.2d at 161).

6

But the question that has concerned the court is that, after abandoning the easement as the Sullivans did, whether the Sullivans can now repudiate that abandonment and reinstate the easement. Courts have long held that blocking the way of an easement does not constitute evidence of abandonment until the other individual benefiting from the easement seeks to access it and any barrier is not removed.[10]

The court next addressed equitable estoppel and concluded that the first two prongs of equitable estoppel *were* met. The court then discussed the third prong of estoppel:

The third prong of equitable estoppel focuses on the injury the other party would suffer if the owner of the easement, in this case the Sullivans, were allowed to contradict or repudiate their earlier admissions, statements or acts:

"An easement may be extinguished by conduct of the owner of it even though he had no intention to give up the easement. This is due to the general principle that the owner of an easement will not be permitted to change a position once taken by him if the change *would cause undue hardship to the owner of the servient tenement*."[11]

The court then concluded that the Sullivans were permitted to reinstate the easement upon certain conditions:

As things stood at trial, the Bresslers would suffer undue hardship if the Sullivans were allowed to repudiate their abandonment and reinstate the easement. But the court concludes that they will not suffer undue hardship if the Sullivans are required to move the encumbrances found by the court to encroach on the easement and to pay the Bresslers' legal expenses. When the Bresslers bought their property, they knew it was encumbered by the boat launch declaration and that they would have to allow their neighbors to use it. The fact that the neighbors are contentious is unfortunate.[12]

---

[10] CP at 34 (citing Edmonds, 54 Wn. App. at 636-637).

[11] CP at 35 (quoting Humphrey, 61 Wn.2d at 567-68) (emphasis added).

[12] CP at 35.

The trial court's ruling permitting the Sullivans to reinstate the easement after they abandoned it is without legal basis. Once an easement is extinguished by abandonment, or any other means, it no longer exists. Thus, it may only be "reinstated" by creation of a new easement.[13]

Here, the trial court concluded that the easement was abandoned. The court's findings support this conclusion:

> The Sullivans' installation of a fence along the property line, down the middle of the easement, was unequivocal, decisive, and inconsistent with the continued existence of the easement. At that point, the Sullivans abandoned the easement. The Sullivans' decision to relocate the fence to the middle of the easement after they were mistakenly told that there was no recorded easement appears to have been done in the mistaken belief that the easement had not been executed or recorded, as acknowledged by the Bresslers. However, the Sullivans' actions after being advised that an easement was recorded were intentional. After receiving verification that the easement was recorded, Ms. Sullivan nevertheless continued with the installation of the fence inside the easement. Her testimony that she thought the wooden posts which were already installed would be dangerous standing alone was not credible.[14]

Neither party has assigned error to these findings. Accordingly, they are verities on appeal. Nor has either party appealed the trial court's conclusion that the easement was abandoned.[15]

Once the court concluded the easement was abandoned, this was sufficient to extinguish the easement. The court's consideration of the equitable estoppel argument was unnecessary and unwarranted. The court did not have authority to order

---

[13] Radovich v. Nuzhat, 104 Wn. App. 800, 806, 16 P.3d 687 (2001) ("the standards for creating an easement by express conveyance and for recreating such an easement are the same") (citing RESTATEMENT OF PROPERTY, § 497 cmt. h (1944)).

[14] CP at 29-30.

[15] While the Sullivans argue in the alternative that the easement was not abandoned, they did not file a cross appeal assigning error to this ruling.

reinstatement of the abandoned easement based on a finding that the Bresslers would not suffer undue hardship if the Sullivans moved the encumbrances and paid the attorney fees as ordered by the court. The trial court appears to have erroneously merged the requirements for abandonment and equitable estoppel and fashioned a remedy of "reinstatement" of an abandoned easement based on the requirements of equitable estoppel. There is no legal support for such a remedy.

The trial court appeared to use the terms "extinguishment" and "abandonment" interchangeably, but abandonment is a separate means of extinguishment. Equitable estoppel or lack of hardship is not a part of the abandonment analysis. The trial court cites Humphrey's reference to 2 *American Law of Property* § 8.99 for the general estoppel principle that "the owner of an easement will not be permitted to change a position once taken by him if the change *would cause undue hardship to the owner of the servient tenement.*"[16] The court then concluded that, if this showing was not made, the Sullivans were allowed to "repudiate their *abandonment* and reinstate the easement."[17] But Humphrey's reference to undue hardship related to a claim of equitable estoppel, not abandonment.[18]

There is no legal support for the proposition that abandonment can be "repudiated" if the "undue hardship" element of equitable estoppel is not established. Indeed, the section of the *American Law of Property* treatise cited in Humphrey has since been replaced with the following to clarify that equitable estoppel is simply an

---

[16] CP at 35 (quoting 61 Wn.2d at 567-68).

[17] CP at 35 (emphasis added).

[18] 61 Wn.2d at 567 (noting that "[a]n easement may be extinguished by conduct of the owner of it even though he had no intention to give up the easement.").

alternative means of extinguishing an easement in the event abandonment cannot be established:

> The extinguishment of an easement may result in part from conduct by the owner of it which would not of itself satisfy the requirements for abandonment. This is through the application of the doctrines of estoppel as exemplified in the general principle that the owner of an easement will not be permitted to change a position once taken by him if the change would result in undue hardship to the owner of the servient tenement.[19]

The other case cited by the trial court, Edmonds v. Williams, does not support the court's remedy of reinstatement of an abandoned easement when no showing of undue hardship is made.[20] The trial court cited Edmonds for the proposition that "blocking the way of an easement does not constitute evidence of abandonment until the other individual benefiting from the easement seeks to access it and any barrier is not removed."[21] But Edmonds held that there was insufficient evidence that an easement was terminated by adverse possession, not abandonment, where a fence was not a sufficient inconsistent use to constitute adverse possession.[22] Here, the court already found there was sufficient evidence of abandonment to extinguish the easement, and there was no claim of adverse possession. Thus, the reasoning in Edmonds does not apply and does not support the reinstatement remedy ordered by the trial court.

Nor does Heg recognize such a remedy. Heg simply held that the evidence was insufficient to establish either abandonment or equitable estoppel.[23] Thus, because

---

[19] 2 AMERICAN LAW OF PROPERTY, § 8.99 (Supp. 1962 & 1977).

[20] 54 Wn. App. 632, 774 P.2d 1241 (1989).

[21] CP at 34.

[22] 54 Wn. App. at 636-37.

[23] 157 Wn.2d at 167.

there was no basis for extinguishing the easement, whether it could be reinstated was not at issue.

The trial court's "Conditional Decree Quieting Title" permitting the Sullivans to reinstate an easement that they had abandoned is without legal basis. Accordingly, we reverse that part of the judgment and remand for the trial court to order extinguishment of the easement.

The Bresslers also challenge the trial court's exclusion of evidence of the Sullivans' bad faith because it was relevant to prove their abandonment claim. Because the trial court found that there was sufficient evidence of abandonment and that finding has not been appealed, we need not reach this issue.

We deny the Sullivans' request for attorney fees. They are not the prevailing party on appeal and they cite no statutory, contractual, or equitable basis for an award of attorney fees.[24]

We reverse in part and remand.

WE CONCUR:

---

[24] The trial court did not award fees other than to allow the Sullivans to pay a portion of them as a condition for reinstatement.