[No. 13152.   Department One.   June 9, 1916.]

THE STATE OF WASHINGTON, *Plaintiff*, v. THE SUPERIOR
COURT FOR JEFFERSON COUNTY, *John M. Ralston,
Judge, Respondent.*[1]

EMINENT DOMAIN—PROPERTY SUBJECT—STATE LANDS—TIDE LANDS
—DEVOTION TO PUBLIC USE—WATER WAYS—STATUTES.   Rem. & Bal.
Code, § 8740, authorizing railroad corporations to condemn land and
any interest in land including lands granted to the state and also
tide and shore lands belonging to the state, refers to state lands
held in a proprietary capacity only, and does not include state lands
segregated from the public domain and appropriated to a public use
by due dedication as a water way by virtue of Id., §§ 8092-8099, re-
lating to harbor areas and water ways across the same.

SAME.   The fact that such dedicated water way had never been
improved or used by the public, after a lapse of twenty-five years,
does not affect its segregation from the general mass of the state's
land or render it subject to condemnation; as such delay does not
operate against the state.

SAME—CONDEMNATION—PARTIES—OBJECTION BY STATE.   Upon a
railroad's condemnation of city streets, the city can convey no rights
as against the state by defaulting, and the state has sufficient in-
terest to appear and contest the appropriation as against petitioners'
without right.

Certiorari to review a judgment of the superior court for
Jefferson county, Ralston, J., entered October 5, 1915, ad-
judging a public use and necessity in condemnation proceed-
ings.   Reversed.

*The Attorney General* and *R. E. Campbell, Assistant*, for
relator.

*Corwin S. Shank* and *H. C. Belt*, for respondent.

FULLERTON, J.—This is a proceeding brought by the Port
Townsend and Puget Sound Railway Company against the
city of Port Townsend and the state of Washington to con-
demn for terminal purposes certain real property lying part-

[1]Reported in 157 Pac. 1097.

ly within and partly without the corporate limits of the city named. The lands sought to be condemned are tide lands. On December 3, 1891, the state of Washington, acting by and through its then board of harbor line commissioners, established a harbor area in front of the city of Port Townsend, and from this harbor area, extending inland and northerly across the intervening tide lands, it platted, dedicated and reserved a strip of land 180 feet wide as a public way for water craft; the same being called on the dedicating plat Hill Avenue Water Way. On the tide lands lying between the harbor area and the uplands and extending easterly from the water way mentioned, there was also subsequently platted and dedicated to public use three certain streets, called on the plat Front street, Water street, and Washington street. Neither the water way nor the streets mentioned have ever been vacated by any direct action on the part of the state or city, nor has the state, in so far as the record discloses, parted with its title to the tide lands adjoining the water way or lying between the streets mentioned. The tract sought to be condemned includes not only the tide lands adjoining the water way and streets named, but a part of the water way and parts of the streets, and an appropriation of the parts sought to be condemned by the railway company will render them useless for the purposes for which they were dedicated. The petition in condemnation was served upon both the city of Port Townsend and the state. The city defaulted. The state however appeared through its Attorney General and questioned the right of the petitioner to condemn not only the water way, but the streets as well. A judgment of condemnation was granted by the court below, and this judgment the state seeks to review in this proceeding.

The water way in question was established and dedicated pursuant to the act of the legislature of March 28, 1890. Laws 1889-90, p. 731; Rem. & Bal. Code, §§ 8092-8099 (P.

C. 477 §§ 217-231). The provisions of the act pertinent to the present inquiry are the following:

"§ 8092. There shall be established one or more public ways across all of the tide flats that are situated within or in front of any incorporated city or town, or within two miles either way from any incorporated city or town, within the state of Washington.

"§ 8093. The public ways provided for in the last preceding section shall not be less than fifty nor more than one thousand feet wide, and shall commence at the outer or deep water end, in not less than twenty feet of water at low tide, and shall extend inland across the state's tide lands.

"§ 8094. The public ways above provided for shall be so located as to include, as near as is practicable, within their bounds all navigable streams running through the tide flats in which they are located, and at such other places as may be necessary for the present or future convenience of commerce.

"§ 8095. A correct plat of all public ways so established shall be made, one copy of which shall be filed with the secretary of state, one copy with the commissioner of public lands of the state; one copy shall be kept in the office of the chairman of the board of harbor line commissioners, and each county shall be furnished with a correct plat of all such public ways established within its borders, and such plats shall be filed as city or town plats are filed and become a part of the county records.

"§ 8096. All the public ways that may be established under the provisions of this chapter are, and shall forever be, reserved from sale or lease as public ways for water crafts."

At the legislative session of 1893, provision was made for the excavation of water ways and the filling in of the adjoining tide lands. However, no excavation was ever done on the water way in question and it remained, up to the time of the commencement of the condemnation proceedings, in the condition it was when originally platted and dedicated. The streets mentioned were extended across the tide lands by the city of Port Townsend in virtue of § 3, art. 15 of the constitution, which authorizes municipal corporations to extend

their streets over intervening tide lands to and across the harbor areas authorized therein to be reserved, and in virtue of the statutes passed pursuant thereto.

The petitioner asserts its right to condemn the tide lands, the part of the water way, and the parts of the streets in question under the statutes of eminent domain which were enacted subsequent to the enactment of the water way statutes before cited. The particular section relied upon is found in Rem. & Bal. Code at § 8740 (P. C. 405 § 85), the material parts of which read as follows:

"Every corporation organized for the construction of any railway, . . . is hereby authorized and empowered to appropriate, by condemnation, land and any interest in land or contract right relating thereto, including any leasehold interest therein and any rights of way for tunnels beneath the surface of the land, and any elevated rights of way above the surface thereof, including lands granted to the state for university, school or other purposes, and also tide and shore lands belonging to the state (but not including harbor areas), which may be necessary for the line of such road, railway or canal, or site of such bridge, not exceeding two hundred feet in width, besides a sufficient quantity thereof for toll-houses, workshops, materials for construction, excavations and embankments and a right of way over adjacent lands or property, to enable such corporation to construct and prepare its road, railway, canal or bridge, and to make proper drains; . . . and in case of a railway to appropriate a sufficient quantity of any such land, including lands granted to the state for university, school and other purposes and also tide and shore lands belonging to the state (but not including harbor areas), in addition to that before specified in this section, for the necessary side tracks, depots and water stations, and the right to conduct water thereto by aqueduct, and for yards, terminal, transfer and switching grounds, docks and warehouses required for receiving, delivering, storage and handling of freight, and such land, or any interest therein, as may be necessary for the security and safety of the public in the construction, maintenance and operation of its railways; . . . And provided further, that if such corporation locate the bed of such railway or canal upon

any part of the track now occupied by any established state or county road, said corporation shall be responsible to the county commissioners of said county or counties in which such state or county road so appropriated is located, for all expenses incurred by . such county or counties in relocating and opening the part of such road so appropriated. The term land as herein used includes tide and shore lands but not harbor areas; it also includes any interest in land or contract right relating thereto, including any leasehold interest therein."

The petitioner derives the power to condemn the water way and the streets in question from the particular words of the statute authorizing corporations for the construction of railways to appropriate by condemnation "land and any interest in land or contract right relating thereto, . . . including lands granted to the state for university, school or other purposes, and also tide and shore lands belonging to the state (but not including harbor areas) which may be necessary for side tracks, depot, transfer and switching grounds," and other like purposes. It does not contend, if we have correctly gathered the position of its learned counsel, that the statute has application to a water way or street which has been improved and is in actual use by the public, but does have application to all such water ways and streets which are not fitted by nature for such actual use, and there is no immediate intention on the part of the proprietor to artificially fit them for that purpose.

If, however, we have mistaken counsel's meaning and it be that they mean to assert that the statute is broad enough to permit the condemnation for railway purposes of any property of the state, other than the specifically exempted part, we cannot agree with the contention. As is well known, the state holds title to property in two entirely distinct capacities, the one a proprietary capacity, as individuals generally hold property, and the other a governmental capacity, that is, in trust for the public use. The rule, therefore, is that a statute conferring upon the state or other municipal corporation

the general authority to sell, or a statute conferring the right to condemn state or other municipal property generally, will, in the absence of express words to the contrary, be confined to such property as it holds in its proprietary character. This principle we announced in the case of *Samish Boom Co. v. Callvert*, 27 Wash. 611, 68 Pac. 367, in the following language:

"The rule is that, whenever a tract of public land is once legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public land, so that authority to sell in general terms will not be construed to embrace or operate upon it, although no reservation is made of it."

So, also, in *State v. Whitney*, 66 Wash. 473, 120 Pac. 116, where we quoted with approval from the case of *Wilcox v. Jackson*, 13 Pet. 498, the following:

"We go further, and say, that whensoever a tract of land shall have once been legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands; and no subsequent law, or proclamation, or sale, would be construed to embrace, or operate upon it; although no reservation were made of it."

Indeed, if this be not the rule, the legislature has, by the act in question, granted to railway companies power to condemn any of the state lands for railway purposes (save that of course which is specially exempted), which would include the lands on which its capitol buildings are situated.

Unless the distinction we have suggested counsel intended to make be sound, there can be no question that the water way and the streets in question are among the exempted classes. The first was set apart for a public use in virtue of a statute duly enacted for that purpose, and the other in virtue of the constitution itself. The lands within their boundaries thus become segregated from the general mass of the state's lands which it holds in its proprietary capacity, and become vested in that special class which it holds specially for the public use.

Nor can we think the suggested distinction tenable. It is true that the water way was established and the streets were extended over these lands more than a quarter of a century ago, and it is true that up to this time no effort has been made to fit them for the uses for which they were intended. But it is also true that the state has not passed any law, or taken any affirmative step, looking to a change in the capacity in which it holds title to them. On the contrary, in so far as actions of this sort is concerned, it holds them today in the same capacity it held them the moment they were segregated from the general mass of its property. If, therefore, the capacity in which the state holds them has been changed from a governmental to a proprietary capacity, the result has been accomplished by lapse of time and the omission of the public to fit them for the purposes for which they were intended. But we cannot think this alone sufficient. The state has the right to proceed in its own time and in its own way to improve its property, and its delay in so doing can convey no legal right in the property to others which such others would not have possessed had the delay not have occurred. We have even held with reference to streets that possession, improvement, and the payment of taxes, no matter how long continued, did not prevent the municipality from ejecting the possessor therefrom and resuming possession itself. *West Seattle v. West Seattle Land & Imp. Co.*, 38 Wash. 359, 80 Pac. 549. Manifestly, the state does not hold its property with any less sanctity.

As supporting the right of the petitioner to condemn the lands, we are cited to our cases which hold that property held by one public service corporation is, under certain circumstances, subject to condemnation by another public service corporation; the case specially relied upon being that of *State ex rel. Washington Boom Co. v. Chehalis Boom Co.*, 82 Wash. 509, 144 Pac. 719. But we cannot think the principle involved in these cases is the principle involved

here. In them there was no question of the power to condemn the particular property of which condemnation was sought, but the question was one of superior right as between the corporations themselves. This is made clear by the following quotation from the case cited:

"It is not the mere ownership of property by a public service corporation that protects it from acquisition by another public service corporation seeking to acquire it for a public use by right of eminent domain; but the question of such a right of acquisition must find its answer in the present or prospective use of such property by the condemnee, the prospective use thereof by the condemner, the comparative advantages flowing to the public as between the ownership thereof by the condemnee and condemner, and the comparative advantage and disadvantages flowing to the condemnee and condemner by the ownership of such property."

In the case before us, the question is solely one of power. The question is whether the state has granted to railway companies the right to condemn land which it has reserved and set apart for a public use. There is no question of superior right as between two public service corporations.

The petitioner makes the further objection that the state is without interest sufficient to enable it to object to a condemnation of the streets named, even though it may contest the petitioner's right to the water way. But streets are public highways, established for the use of the public, and the state in its sovereign capacity may object to their appropriation, as against any one who attempts to appropriate them without right. The city of Port Townsend, by its default, conveyed no right of property in the streets. A city has no power under the statutes to grant affirmatively to a railway company the right to the use of its streets to the exclusion of the public therefrom (*State ex rel. Schade Brewing Co. v. Superior Court*, 62 Wash. 96, 113 Pac. 576); and what it cannot do by affirmative grant, it cannot do by defaulting in a condemnation proceeding.

In its brief the petitioner refers to this water as a "paper water way," and to these streets as "paper streets," asserting that they exist only in name. Presumably it is meant by this that they have never been improved so as to make them of use to the public. But if it be meant thereby to assert that they have no potentiality in fact, we cannot agree with the assertion. As we have said, they were laid out and established pursuant to law, and have never been vacated by any act of the authorities creating them. They have thus all of the validity of any water way, or of any street, whether used or unused; and while the proper authorities, in a proper proceeding, may allow them to be taken for uses other than that for which they have been set apart, they cannot be so taken by an ordinary proceeding in condemnation.

Our conclusion is that the trial court erred in adjudging them subject to condemnation. The judgment is therefore reversed, and the cause remanded with instructions to exclude them from the condemnation order.

MORRIS, C. J., MOUNT, and ELLIS, JJ., concur.