[No. 30016.   Department One.   October 18, 1946.]

COMMERCIAL WATERWAY DISTRICT No. 1, *Respondent*, v. C. J. LARSON *et al., Appellants.*[1]

[1]Reported in 173 P. (2d) 531.

*H. E. Foster*, for appellants.

*Shorett, Taylor & Revelle*, for respondent.

JEFFERS, J.—This action was instituted by commercial waterway district No. 1, under the provisions of Rem. Rev. Stat., § 812 [P.P.C. § 55-5] *et seq.* (unlawful detainer statutes) against C. J. Larson and wife.

The complaint alleged that plaintiff was at all times therein mentioned a municipal corporation, organized and existing under and by virtue of the laws of the state of Washington (Rem. Rev. Stat., §§ 9724 to 9776-10 [P.P.C. § 431-1 to 431-31]), and that at all times therein mentioned plaintiff was the owner of the property therein described.

It is further alleged that on November 8, 1945, and for several months continuously prior thereto, defendants occupied real property in the Duwamish waterway adjoining lots 45 and 46, block 25, McLaughlins Addition to King county, and between the north and south lines of such lots extended to the center of the Duwamish river, which property is now and at all times mentioned in the complaint was owned by plaintiff; that defendants entered into possession of the premises without the knowledge or consent of the plaintiff, and without color of title thereto.

It is further alleged that on November 8, 1945, plaintiff caused to be served upon defendants, in the manner provided by law, a notice to vacate the premises within three days from the date of service of the notice; that the notice remains uncomplied with, although more than three days have elapsed since its service.

The prayer of the complaint is that plaintiff be let into immediate possession of the premises; that defendants be removed therefrom, and that any buildings or pilings placed

on the premises by defendants be removed therefrom; and that a writ of restitution be issued.

The record shows that defendants demurred to the original complaint, a copy of which demurrer was received by attorneys for plaintiff on December 13, 1945. The record before us shows what was apparently a docket entry made on December 19, 1945: "Demurrer overruled. Plaintiff's motion to amend complaint granted." While the motion does not appear in the record, the complaint shows that paragraph three apparently was amended by interlineation.

After the motion to amend had been granted, and on December 27, 1945, defendant C. J. Larson verified his answer, which was served on respondent on December 28th. The answer denies the material allegations of the complaint, and then sets up two purported affirmative defenses.

In the first affirmative defense, defendants in substance alleged that plaintiff at no time was the owner, or entitled to the possession, of the property described or referred to in the complaint, nor was it authorized in any manner to serve notice on defendants to vacate the property, nor was it authorized to institute this action.

Defendants then referred to a certain injunction proceeding instituted by them. However, it appears from the evidence that plaintiff was not a party to or in any manner concerned with such injunction proceeding, so that action has no relevancy herein and will not be further referred to.

In their second affirmative defense, defendants alleged that they

". . . have an easement of egress in and to said property over Michigan avenue and the said McLaughlin's Addition which is a substantial right of the defendants."

The cause came on for hearing before the court on April 2, 1946.

The evidence material to a decision in this case may be summarized as follows: Plaintiff was organized under the commercial waterways act of 1911 (Rem. Rev. Stat., § 9724 et seq.). This district was created for the purpose of straightening and widening the course of the Duwamish

river for the last several miles before it enters Elliott bay. To straighten the river it was necessary to acquire certain land for a right of way for the new channel, to then dredge out this channel, and finally to divert the water from its old channel to this new one.

A right of way five hundred feet in width was required, and to acquire this right of way condemnation proceedings were started by the district. However, in certain instances direct negotiations were carried on with the owners of the property, and deeds were obtained conveying title to plaintiff without the necessity of completing the condemnation proceedings, in so far as that particular land was concerned.

Plaintiff's exhibit No. 2 is a photostatic copy of Joseph R. McLaughlin's Water Front Addition to the city of Seattle. The dedication of this plat was executed on May 16, 1906, and shows the course of the Duwamish river as it then existed in relation to the area with which we are here concerned.

The right of way which was obtained by plaintiff for the new channel cuts across and takes the westerly portion of lot 45, and a small part of lot 46, in block 25 of McLaughlin's Addition.

Plaintiff's exhibit No. 3 is a warranty deed dated April 29, 1912, whereby the McLaughlin Realty Company, as grantor, conveyed to plaintiff, as grantee, lots 41 to 44, both inclusive, and a certain part of lots 45 and 46, block 25, describing by metes and bounds the parts of the last two lots so conveyed. All of the property described in exhibit No. 3 was used for the new channel.

Plaintiff's exhibit No. 10 shows the location of the new channel as it was dredged in 1913 to a width of five hundred feet. When defendant Larson was on the witness stand, he was asked to, and did, indicate on exhibit No. 10, by two red marks, the location of his houseboats. Mr. Larson also testified that these buildings were on tideland and about six feet out in the channel, and that at high tide they were in the water.

Defendants originally owned two houseboats, which were built in about 1930. They acquired title to these structures on October 7, 1943, by bill of sale from one Ora S. Moe. There is testimony to the effect that one of the houseboats was destroyed prior to the institution of this action. However, all through the trial reference is made to two houseboats. It is apparent from the exhibits and the testimony that these houseboats were, and one of them at least still is, located on tidelands, and that the land is part of that purchased by plaintiff from the McLaughlin Realty Company in 1913, for the purpose of constructing the new channel. In so far as the record shows, title to this land still stands in the name of plaintiff.

It is not too clear from the evidence whether both or only one of these structures was on piling, but in any event they were on the tidelands and not out in the channel below the line of low water. As indicated, the tide ebbs and flows in this waterway.

Defendants admitted that their only claim of right to maintain these structures at this location was based on their bill of sale and some claim of an easement of ingress and egress.

The evidence shows a proper notice to vacate was served on defendants. Following the service of such notice, this action was commenced by plaintiff.

The trial court entered findings of fact, conclusions of law, and judgment favorable to plaintiff. We quote finding No. 3:

"That on November 8, 1945, and for several months continuously prior thereto the defendants occupied certain real estate owned by the plaintiff, described as lots 41 to 44, both inclusive, in block 25, Joseph R. McLaughlin's Water Front Addition to the city of Seattle, King county, Washington, and that part of lot 45 in said block 25, described as follows: [Then follows a metes and bounds description which is the same as that contained in the deed from the McLaughlin Realty Company, hereinbefore referred to.]

"Also, all that part of lot 46 in said block 25, more particularly described as: [Then follows a description which

is the same as that contained in the deed last above mentioned.]"

Finding No. 4:

"The title of the said real estate was acquired by deed by the plaintiff on the 29th day of April, 1912; that the real estate was acquired for a proposed right-of-way by the plaintiff for a waterway to be constructed and used as a channel for the Duwamish river. That during the years 1912 and 1914 such a new waterway was constructed by the plaintiff, and ever since said date of construction has been used as a part of the Duwamish waterway through which the Duwamish river flows into Puget sound."

Finding No. 5:

"That the defendants purchased a houseboat which is now and continuously for several years last past has been located on the piling between the high water mark and the low water mark in said Duwamish waterway upon the said real estate above described, and which real estate is owned by the plaintiff; that the said waterway at the said location is a navigable body of water over which the tide ebbs and flows."

Finding No. 6:

"That the defendants entered into possession of the said premises without the knowledge or consent of the plaintiff and without color of title thereto, and have continued in possession without the consent or the acquiescence of the plaintiff."

In accordance with the conclusions based upon the findings, the court entered judgment to the effect that plaintiff was entitled to immediate possession of lots 41 to 44, both inclusive, in block 25, Joseph R. McLaughlin's Water Front Addition to the city of Seattle, and that part of lot 45 in block 25 described as follows: (then follows the metes and bounds description hereinbefore referred to); also to that part of lot 46, block 25 described as follows: (then follows the description to which we have hereinbefore referred). The judgment further directed that defendants should be removed from possession of the premises, and that any building and piling placed on the premises by defendants should be removed forthwith. A writ of restitution was

directed to be issued, placing plaintiff in immediate possession of the premises. Defendants have appealed from the judgment entered.

Appellants' assignments of error are in denying and overruling the demurrer to the complaint; in holding the state of Washington had no interest in the Duwamish river; in holding that the government of the United States had no interest in the waters of the Duwamish river, a navigable stream; and in entering judgment for respondent and against appellants.

May we say here that we do not think the above assignments of error truly indicate the trial court's action or the effect of the judgment entered.

Appellants' main contentions are that respondent has no interest of any kind or description in the water, bottom, or banks of the Duwamish river, and consequently no authority to institute this action; that the Federal government has absolute control of all navigable waters; and that the beds and shores of this waterway belong to the state of Washington.

Respondent states the questions presented as follows:

"1. Where a commercial waterway district acquires title by deed to a new channel for diversion of a navigable river, and the river is then diverted to the new channel, may the waterway district maintain an action in unlawful detainer against a squatter who has moored his houseboat in the waterway?

"2. Where the legislature delegated to a commercial waterway district, a municipal corporation, the exclusive responsibility for maintenance of a navigable waterway, may such waterway district maintain an action in unlawful detainer against a squatter who has moored his houseboat in the waterway?"

█ Rem. Rev. Stat., § 812 [P.P.C. § 55-5], subd. (6), provides:

"Any person who shall, without the permission of the owner and without having any color of title thereto, enter upon land of another and who shall fail or refuse to remove therefrom after three days' notice, in writing, to be served in the manner provided in this act,"

is guilty of unlawful detainer, notwithstanding the conventional relationship of landlord and tenant does not exist. *Columbia & Puget Sound R. Co. v. Moss,* 44 Wash. 589, 87 Pac. 951; *Pacific Mut. Life Ins. Co. v. Munson,* 115 Wash. 119, 196 Pac. 633.

Rem. Rev. Stat., § 9724 (commercial waterways act), provides that the commissioners of the district shall have the power and it shall be their duty to manage and conduct the business and affairs of the district.

Rem. Rev. Stat., § 9731 [P.P.C. § 431-33], provides that any commercial waterway district shall have the following powers and authority:

"(a) The right of eminent domain, with power by and through its board of commissioners to cause to be condemned and appropriated private property for the use of said organization in the *construction* and *maintenance* of a system of commercial waterways and make just compensation therefor: Provided, that the property of private corporations may be subjected to the same rights of eminent domain as that of private individuals: Provided, further, that the said board of commissioners shall have the power to *acquire by purchase* all the property necessary to make the improvements herein provided for.

"(b) Said board of commissioners herein provided shall have the right, power and authority to *straighten,* widen, deepen and *improve* any and all rivers, watercourses, streams, whether navigable or otherwise, flowing through or located within the boundaries of said district, or extensions or enlargements thereof.

"(c) To construct all needed and auxiliary ditches, canals, flumes, locks, dikes, and all other artificial appliances in the construction of a commercial waterway system, and which may be necessary or advisable to protect the land in any commercial waterway district, from overflow, or to assist and become necessary in the preservation and maintenance of such commercial waterway system.

"(d) In the accomplishment of the foregoing objects, the commissioners of said waterway district are hereby given the right, power and authority by *purchase* or the exercise of the power and authority of eminent domain, or otherwise, to acquire all necessary and needed rights of way in the straightening, deepening, or widening, or otherwise im-

proving of such rivers, watercourses or streams, and such auxiliary ditches, canals, flumes and dikes hereinabove mentioned, . . . " (Italics ours.)

Rem. Rev. Stat., § 9751 [P.P.C. § 431-69], provides in substance that where property is acquired by the district through condemnation proceedings, ". . . the title to any property so taken shall be vested in fee simple in such district."

The same would undoubtedly be true where the property is acquired by deed, as in the case of the particular land here involved.

In *Commercial Waterway Dist. No. 1 v. King County,* 197 Wash. 441, 85 P. (2d) 1067, we stated that a commercial waterway district can exercise such powers as are specifically accorded to it by statute, or fairly implied as incidental and essential to the powers so granted.

Whether under our constitution (Art. XVII, § 1) the title to land originally acquired by a commercial waterway district by deed for the purpose of straightening an existing waterway, automatically becomes vested in the state, if and when the land becomes submerged, seems to be doubtful, to say the least. *Scott v. Standard Oil Co.,* 183 Wash. 123, 48 P. (2d) 593.

So far as we have been able to determine, this court has never been called upon to determine whether or not Art. XVII of the constitution would apply to tidelands created by the construction of an artificial channel at a time subsequent to statehood. In the case of *Scott v. Standard Oil Co., supra,* the tidelands over which East Waterway was constructed existed at the time Washington was admitted into the union. The cited case contains this statement:

"Under Art. XVII of the constitution, title to tide lands passed to the state, *upon its creation,* in full proprietary ownership. *Port of Seattle v. Oregon & Washington R. Co.,* 255 U. S. 56, 41 S. Ct. 237." (Italics ours.)

We also stated in the *Scott* case that the state, possessing the title, could dispose of the tidelands at will, and could grant to the port district any part or all of the title which it possessed, or could grant anything less than title in the way

of the right to possession and use *which the legislature might deem advisable.*

In the cited case, the legislature granted to the port district the use and control of the waterway area, with the exception of a certain portion, the control of which was granted to the city of Seattle.

In the commercial waterways act, no reservation of any kind is made to the state of the tidelands created by the construction of the new channel. The state is not a party to this action and is asserting no claim here, and, so far as we are advised, has never asserted any claim to or right in the tidelands created by this new channel.

Referring now to our forcible entry and detainer statutes, may we say that the cases, while perhaps not in conflict, are not too clear as to just what issues are involved under the different provisions of the statute. For instance, we find in *Gore v. Altice,* 33 Wash. 335, 74 Pac. 556, the following general statement in regard to the purpose f the act:

"The forcible entry and detainer law has always been recognized, ever since its enactment, as a law in the int rest of peace, or to prevent violations of the peace and acts of violence in contentions over the possession of real property. It is a provision for a speedy determination, not of any title to the real estate, or of the right of possession, but of the question of who was in actual possession, and if such actual possession was disturbed; and the only question is, was the occupant in the actual and peaceable possession of the property at the time the possession was wrested from him? The statute provides that the occupant of real property, within the meaning of the law, is one who, for five days next preceding such unlawful entry, was in the peaceable and undisturbed possession of such real property."

In *Angel v. Ladas,* 143 Wash. 622, 255 Pac. 945, we made a distinction between an action brought under the "forcible entry" or forcible detainer statute and one brought under § 2 of the unlawful detainer statute (now Rem. Rev. Stat., § 812, subd. (2)), and in regard thereto stated:

"It is to be noticed that that action was prosecuted and judgment rendered therein as one of 'unlawful detainer,'

not one of 'forcible entry' or of 'forcible detainer.' Therefore, it was not an action to merely protect peaceable possession from wrongful entry, but was an action to obtain possession from one who had rightfully entered."

The statutes are then set out, after which the opinion states:

"These considerations, it seems to us, render it plain that there was involved in that action the right of possession. Indeed, counsel for Angel concedes this much in his brief. Thus, we think, the action is distinguishable from one of 'forcible entry' or 'forcible detainer,' wherein the question of the right of possession, as well as the question of title, is excluded from consideration."

Rem. Rev. Stat., § 812, subd. (6), under which this action is brought, was passed in 1905. While this subdivision does not contemplate that the entry must be forcibly made, or that the possession be forcibly detained, yet the statute does contemplate an unlawful entry and an unlawful detention of the property, and the facts herein show that appellants entered upon these tidelands without permission of the owner and without any color of title, and that they have refused to remove therefrom after a proper notice was given to them by respondent.

In *Erz v. Reese*, 157 Wash. 32, 288 Pac. 255, we held that the pledgee of a lease, assigned to him as collateral security, was entitled to possession, and could maintain an action of unlawful detainer under § 812, *supra*, against a subtenant in default. In the cited case, we quoted from 21 R. C. L. 663, § 26:

" 'He [the pledgee] is entitled to maintain any action for the protection of his possession and special rights of property, not only against third persons who wrongfully interfere with the same, but also against the pledgor, if he wrongfully obtains or retains possession.' "

We have been able to find only one case in this state from which it might be contended that a plaintiff must be the owner of or have title to the property involved in order to permit him to institute an action of unlawful detainer under § 812, subd. (6), *supra*, or any other provision of the forcible

entry, forcible detainer, or unlawful detainer statutes. As hereinbefore shown, under the forcible entry or forcible detainer statutes, no question of title or right to possession is involved. In the two cases cited, which involved certain subdivisions of § 812, *supra* (not § 812, subd. (6)), the right to possession only was involved. The one case which was brought under § 812, subd. (6), is *Columbia & Puget Sound R. Co. v. Moss,* 44 Wash. 589, 87 Pac. 951. In the cited case, the original complaint was based on what is now Rem. Rev. Stat., § 811 [P.P.C. § 55-3], subd. (2) (forcible detainer). Afterwards, by leave of court, an amended complaint was filed, alleging not only a forcible detainer under the above subdivision, but also unlawful detainer under § 1 of the act of March 7, 1891, Laws of 1891, p. 212, and subd. 6 of § 3 of the act of March 6, 1905, Laws of 1905, p. 173 (now Rem. Rev. Stat., § 812, subd. (6)). We quote from the opinion:

"At the conclusion of the plaintiff's testimony, the court found that it was not in peaceable and undisturbed possession of the property in controversy for the five days next preceding the unlawful entry complained of, and granted a nonsuit.  .  .  .

"If the peaceable and undisturbed possession of the appellant for the five days next preceding the entry of the respondent were the only issue in the case, we are not prepared to say that there was error in the court's ruling, but inasmuch as that question may not arise on a retrial we will not decide it on this appeal. We are satisfied, however, that the appellant made out a *prima facie* case under other provisions of the statute, and that the respondent should have been put upon his defense.  .  .  .

"In disposing of the case the court below expressed the opinion that the plaintiff's remedy was by ejectment, but *it* apparently *overlooked* the fact that unlawful detainer will lie under the above statutes in many cases where ejectment was the only remedy under former laws.

"We will add, in conclusion, that the appellant alleged and proved its title to the property, that the respondent entered without permission and without having color of title thereto, that due notice to remove from the premises was given and that respondent failed to comply therewith. This made a *prima facie* case for the appellant, and granting of a nonsuit was error."

It is apparent that, in the cited case, the plaintiff alleged and proved that it was the owner of the property involved. We do not think it can be assumed from the decision that, had the plaintiff shown that it had been granted certain rights by the owner of the property, under which it was entitled to the possession of the property, and had it shown that the defendant had entered the property without permission of the owner and without color of title, and had refused to vacate the premises after proper notice so to do had been served upon him by such plaintiff, the plaintiff could not maintain an action under § 812, subd. (6), *supra*.

However, we will assume that, respondent having alleged that it was the owner of the tidelands here involved, it became necessary to prove that fact.

The case of *Hill v. Newell*, 86 Wash. 227, 149 Pac. 951, involved the improvement of the Duwamish river with which we are here concerned. In the cited case, the appellants, who were abutting property owners on the old channel of the Duwamish river, which was to be abandoned by the straightening of the channel, brought this action against the district to restrain the filling of the old channel and its ultimate sale by the waterway district. The main question presented, as stated by the court, was "whether the title to the abandoned bed is in appellants or the waterway district." While the court determined that appellants, as abutting owners, had no riparian rights either to the bed of the Duwamish river or the waters thereof, we also held that, under the commercial waterways act, the title to the abandoned portion of the river passed to the waterway district.

█ There is no question but that the waterways act authorized respondent in the instant case to acquire the land needed for this improvement, either by purchase or condemnation, and to take title to the land so purchased in its name.

The tideland here in question, upon which appellants' structures are located, was acquired by respondent by warranty deed, and title to the property still stands in the name of the district.

■ We are of the opinion that this court is not here called upon to determine whether or not the state might have, or did, become vested with the title to the tidelands created by the construction of the new channel, by virtue of Art. XVII, § 1, of our state constitution, at the time the water was diverted from the old channel to the new one, as we are of the opinion that the legislature, by the provisions of the waterways act, expressly granted to the district the right to acquire the land to be used for the new channel, either by condemnation or purchase, and expressly stated that title to the land so acquired should be vested in fee simple in the district.

The provisions above referred to, it seems to us, clearly indicate that the state intended to, and did, grant to the district whatever rights, if any, to the tidelands created by the new waterway the state might have or claim under the constitutional provision above mentioned. It follows, then, it seems to us, that the district, having by warranty deed obtained title to the land here in question, was and is justified in contending that it is the owner of the tidelands here involved.

Appellants seem to argue that respondent is claiming some right in the water of the new channel. We are not here concerned with any rights of navigation, but are concerned only with the right to possession of the tidelands, which are not in the navigable portion of the waterway, and therefore it does not become necessary to decide what the rights of the Federal government may be relative to navigation.

"The right of the United States in the navigable waters within the several states is limited to the control thereof for purposes of navigation." *Port of Seattle v. Oregon & Washington R. Co.*, 255 U. S. 56, 41 S. Ct. 237.

■ Appellants, being unlawfully in possession of the tidelands, could not obtain any easement of ingress and egress over such lands, even if it be conceded that such an easement might be established, which we do not concede.

For the reasons herein assigned, we are of the opinion the findings made by the trial court are supported by the evi-

dence, and that the conclusions and judgment based thereon were right.

The judgment is therefore affirmed.

MILLARD, C. J., ROBINSON, and SCHWELLENBACH, JJ., concur.

