[No. 36192.   Department Two.   February  28, 1963.]

COMMERCIAL WATERWAY DISTRICT No. 1 OF KING COUNTY, *Appellant,* v. PERMANENTE CEMENT COMPANY, *Respondent and Cross-appellant.**

*Reported in 379 P. (2d) 178.

*Taylor & Taylor*, for appellant.

*Allen, DeGarmo & Leedy*, by *Stuart G. Oles*, for respondent and cross-appellant.

DONWORTH, J.—Appellant, Commercial Waterway District No. 1 of King County, brought an action of ejectment against respondent, Permanente Cement Company, to determine title to certain real property described below and to eject respondent therefrom. Respondent answered and alleged affirmatively that it had acquired title to the disputed property by adverse possession. The trial court rendered judgment quieting title in appellant, but held that appellant was estopped from ejecting respondent. Appellant appeals from the trial court's refusal to eject and respondent cross appeals from the portion of the trial court's decree quieting title in the district.

Appellant waterway district, pursuant to the Laws of 1911, chapter 11, undertook to straighten, deepen, and widen the Duwamish River from Elliot Bay upstream for a distance of about 5 miles. Appellant, in the years 1911 and

1912, acquired, by purchase and condemnation, a right of way about 5 miles long and 500 feet wide across the Seattle tideflats. This right of way was dredged its full width by appellant in 1915, and the Duwamish River was then diverted into this new channel, which from that date has constituted the Duwamish Waterway. The waterway is, and at all times since then has been, open to use by the public for all purposes of navigation without toll or other charges.

Since 1924 the biennial dredging of the Duwamish Waterway has been carried on exclusively at government expense under the supervision of the United States Army Corps of Engineers. The presently dredged channel is about 250 feet wide. The tract of disputed property was acquired by condemnation proceedings and is within the 500-foot waterway but outside the dredged channel. The tract covers an area of 1442.86 feet by 80 feet abutting respondent's upland property on the west. Although appellant has, from time to time, performed some work in the maintenance or repair of the banks of the Duwamish Waterway, it has performed no work on the disputed tract since 1915.

Respondent acquired the upland property adjoining the disputed tract on the east and, in 1946, constructed thereon facilities for loading, unloading, and processing of cement, gypsum and other products. At the same time as their facilities were being built, respondent obtained the permission of the Army Corps of Engineers to dredge parts of the disputed tract, and to erect thereon a permanent dock and loading facilities to accommodate ships of more than 400-foot length. Some 300,000 tons of material are unloaded at this dock annually, and the business operations of respondent require access to the dredged channel.

Although the dock and loading facilities were constructed in 1946, no objection was made to respondent's use of its dock until 1959. In that year, appellant asserted its right to collect rental and offered to lease the tract in question to respondent.

Respondent refused to sign the lease, asserting, among other things, that it was the owner of the disputed tract

and that in any event appellant had no right or power to exact rental from respondent for the use of its dock. This suit for ejectment followed. Respondent claimed as its principal defense that it had acquired title to this tract by adverse possession.

If respondent is correct in its contention that it has acquired title to the disputed tract by adverse possession, the other questions raised by the parties are not necessary to our determination of this case. This contention thus becomes the subject of initial inquiry. The principal problem in acquiring adverse possession against appellant is that it is a quasi-municipality.

It is fundamental in this jurisdiction that title by adverse possession cannot be acquired against the state. *State v. Scott*, 89 Wash. 63, 154 Pac. 165 (1916). Nor can title by adverse possession be acquired to property held by a municipality for public purposes in its governmental capacity. *West Seattle v. West Seattle Land & Imp. Co.*, 38 Wash. 359, 80 Pac. 549 (1905). A public street is held by a municipality in its governmental capacity and title to a portion of it cannot be acquired by adverse possession. *West Seattle v. West Seattle Land & Imp. Co., supra; Mueller v. Seattle*, 167 Wash. 67, 8 P. (2d) 994 (1932). In *Rapp v. Stratton*, 41 Wash. 263, 83 Pac. 182 (1905), the property in question was an alley in the city of Spokane. The court reasserted its holding in the *West Seattle* case. It added:

" . . . The property upon which the appellant is seeking to obtain title by adverse possession is confessedly held by the city as a trustee for the public, and not as property of the municipality."

This court has recognized that if land were held by a municipality in its proprietary capacity the land would be subject to being acquired by adverse possession the same as if owned by a private individual. *Gustaveson v. Dwyer*, 83 Wash. 303, 145 Pac. 458 (1915).

In the instant case we conclude that there is no basis to consider a *water* highway as being held in a different capacity than a *land* highway and that appellant owns the property within the waterway in its governmental

capacity. The land acquired by purchase and condemnation within the 500-foot right of way for the construction of the waterway is held in trust for the public. Land held by a municipal corporation in trust for the public is not subject to being alienated unless expressly so provided by the legislature. *Buckhout v. Newport*, 68 R. I. 280, 27 A. (2d) 317, 141 A. L. R. 1440 (1942); *Aldrich v. City of New York*, 208 Misc. 930 145 N. Y. S. (2d) 732 (1955).

It is possible for a quasi-municipality to hold land in a proprietary capacity or a governmental capacity. Pursuant to the Laws of 1911, chapter 11, § 8, title to the abandoned river bed of the Duwamish River (which was abandoned by reason of the diversion of the river into the waterway) became vested in appellant district with the right of sale. In *King Cy. v. Commercial Waterway Dist.*, 42 Wn. (2d) 391, 255 P. (2d) 539 (1953), we held that the district, in selling such property, acted in a proprietary capacity. (For a thorough discussion of the abandoned river bed owned by the district, see *Commercial Waterway Dist. v. State*, 50 Wn. (2d) 335, 311 P. (2d) 680 (1957).)

In regard to property acquired for the construction of the waterway, no right to alienate was granted. We will not sanction the acquisition of title by indirection when respondent cannot directly, by legal means, acquire title. The land within the right of way was acquired for a public purpose. It is held in a governmental capacity, and the district cannot be divested of it by adverse possession.

■ The contention is made by respondent that the disputed property is outside the presently dredged channel, that it is not now being used as part of the regular water highway, and that there are no foreseeable plans by the waterway district to again widen the channel and thus make use of the tract now claimed. Assuming this to be true, it does not change the character of appellant's title which was declared to be for a public purpose by the legislature.

In *Commercial Waterway Dist. No. 1 v. King Cy.*, 200 Wash. 538, 94 P. (2d) 491 (1939), the voters of King County had approved a bond issue to aid in a harbor development

project. The resolution submitted to the voters recited, in part, that the intent of the board of county commissioners was to use part of the proceeds of the bond issue to acquire, for public use, sites for wharves and docks along the Duwamish Waterway, the same waterway we are now concerned with. From the dock site fund, the county purchased property for a dock abutting on the waterway and constructed one thereon, though it was never used as a public dock or wharf. The county sold the tract to the Hemrich Brewing Company.

This court affirmed a superior court judgment canceling and annulling the deed, holding that it was acquired by the county in a governmental capacity in trust for the public and that it could not be sold by the county to a private party. After reciting that the purpose of acquiring the property was to procure dock sites and preserve them until the growth of Seattle and its harbor should require docks at such locations, the court answered the contention that, although the county acquired the property in a governmental capacity, the county could sell it since it was no longer necessary for the purpose for which it had been acquired, by stating:

" . . . The fact that that need has not yet appeared, does not authorize the county commissioners to pass the property back into private ownership by disposing of the fee title. That Seattle harbor has reached the zenith of its maritime development, is not susceptible of proof. The need for docks on these waters may arise in the future. The intention of the voters that not all of the new waterfront should pass into private hands, but that the fee title to some of it should be acquired and held in trust for the public, cannot be defeated by the county commissioners upon the theory that there is no present and immediate need."

In *Martin v. Stockton*, 39 Cal. App. 552, 179 Pac. 894 (1919), Miner Channel, a drainage waterway, had been devoted to public use for 50 years. The court held that lands situated within the boundaries or exterior lines of a waterway and drain could not be acquired by adverse possession, even though the structures on the land claimed had

not interfered with the use and purposes to which the city of Stockton devoted the channel. See, also, *State v. Superior Court*, 91 Wash. 454, 157 Pac. 1097 (1916).

It follows from our discussion above that title to the disputed tract could not have been acquired by Permanente Cement Company by adverse possession.

Although the trial court quieted title to the disputed tract in appellant, it refused to eject respondent therefrom. To the refusal to eject, appellant assigns error. Generally, if a property holder has title quieted in him, ejectment of an unauthorized occupier would follow as a matter of course. The nature of a commercial waterway district and the extenuating facts in this case require additional considerations than those presented in the usual ejectment action.

The 80 foot by 1442.8 foot tract in dispute is covered by water except for one small portion of the bank protruding into the waterway. The dock and loading facilities constitute approximately one sixth of the actual area designated above. The boundaries of the tract were stipulated to by the parties for the purpose of this litigation for the reason that this was the area the board of commissioners attempted to have respondent lease from the district. The dock itself extends only 50 feet out into the waterway. If the use of the waterway is free to all vessels, as appellant contends in his argument relative to the governmental or proprietary character of the waterway, then for practical purposes it is only the dock and loading facilities built in conjunction with it that is subject to ejectment.

Respondent asserts that it has a right of access to the main channel of the waterway under its theory of estoppel by condemnation and assessment. Respondent argues that a public body is estopped to deny access to a public facility to a landowner specially assessed for construction of the facility.

The construction of the Duwamish Waterway was financed primarily through a bond issue and warrants funded by special assessments on landowners within the geograph-

ical limits of Commercial Waterway District No. 1, and also by contributions from King County and from proceeds of the sale of the abandoned bed of the Duwamish River. The land within the district was assessed according to the benefits received. *Behrens v. Commercial Waterway Dist. No. 1,* 107 Wash. 155, 181 Pac. 892, 185 Pac. 628 (1919). The assessments were determined by a jury acting under judicial instructions to fix the assessments on the basis of the increase in value arising out of the construction of the waterway.

The trial court found that the predecessor in interest of the upland now held by respondent paid all assessments levied thereon. We cannot know whether the jury more than 40 years ago took into consideration direct access of the land to the waterway in its determination of the upland's increase in value. Certainly the principal increase in value would arise from the ability of an abutting owner of prospective industrial property to construct docks and loading facilities for useful access to the dredged channel. The landowners in the district could be assessed and charged only to the extent of the special benefits received. *Behrens v. Commercial Waterway Dist. No. 1, supra.*

■ Estoppel as urged by respondent is only one of the factors we deem important in regard to right of access. One of the purposes of the legislature in enacting these statutes was to create a waterway that would foster the development of industrial properties. The waterway is, after all, a *commercial* waterway. Certainly, navigation upon these waters is not an end in itself. Dock facilities are essential to a commercial waterway development.

*Blaine v. Hamilton,* 64 Wash. 353, 116 Pac. 1076 (1911), was a case involving an attempt to enjoin the voters of King County from voting on a bond issue. The purpose of the bonds was to contribute to the construction of harbor improvements in the county, including the Duwamish Waterway, and for the acquisition of sites for public wharves and docks. (See *Commercial Waterway Dist. No. 1 v. King Cy., supra.*)

It was contended by those seeking the injunction that the propositions had nothing in common. This court stated, at page 358:

" . . . The item for wharves and docks is strongly condemned as bearing no relation to the other parts. Suppose the matters had been separately submitted, and bonds for that item had been authorized and the others had failed to carry. The hypothesis, we think, demonstrates the fallacy of the appellants' contention. Experience has shown the wisdom of the public retaining control of such matters. The larger harbor would be incomplete if the public failed to provide aids for its utilization. Wharves and docks are but adjuncts to the harbor. They are but connecting links between the highways of the land and the highways of the sea. They are to sea commerce what a bridge which spans the stream is to land commerce. . . ."

The foregoing quotation we think demonstrates the need for access and that the court, in 1911, when the waterways were being developed, considered access to the navigable channels as a natural attribute of land abutting the waterway. Unless the county, in acquiring abutting property for the construction of wharves and docks, were allowed access to the navigable channel, such wharves and docks would be completely useless.

The 500-foot right of way was originally dredged its full width. Had this situation continued (as we presume was intended by the legislature), the problem in this case in all likelihood would never have arisen. Although the district, through its board of commissioners, was to operate and maintain the waterway, it has, since 1924 (as indicated in this opinion), turned over the dredging of the channel to the federal government.[1] The latter has dredged the channel for a width of only about 250 feet, leaving a margin of 125 feet on each side of the channel undredged, unless done at the expense of the abutting owners as in the instant case.

---

[1]It is interesting to note that House Bill 409 providing for the dissolution of commercial waterway districts was introduced in the 1961 legislature. The bill passed in the House of Representatives. The committee to which the bill was referred in the Senate recommended that it pass; however, the bill never came before the Senate for a vote.

In regard to the necessity of access to the waterway by abutting landowners, the following took place on cross-examination of Mr. Ralph L. Ballinger, one of the commissioners of Commercial Waterway District No. 1 since 1948, and chairman of the board of commissioners at the time of the trial:

"Q. Mr. Ballinger, you say the primary use of the waterway is by the land owners abutting upon it, such as docks, wharves, log storage and the like, is that correct? A. That's correct, sir. Q. In every instance that requires the construction by the land owner of docks or piling or dolphins or loading facilities on the abutting property, is that correct? A. Yes, I assume so, yes. Q. So it is fair to say that the primary use of this waterway requires construction by abutting land owners of some sort of facilities on the portion of their property abutting upon the waterway? A. Yes."

There is no obstruction to public navigation by respondent's use of the dock it has constructed (otherwise no permit would have been issued by the army engineers). There are no present plans by the district to again widen the channel of the waterway, nor are any other improvements in the area contemplated. No right of the general public is being denied. To allow access to the main channel is consistent with the public right of navigation thereon and commercial development. One must keep aware of the fact that the channel presently dredged by the federal government is only about 250 feet wide and cannot be reached without some improvements within the waterway by the abutting landowners.

We are of the opinion that it would be inconsistent with the function of a commercial waterway to deny the right of access to the waterway to upland owners who have developed industrial plants along its banks, as long as no regulation prevented the construction of their docks and no present injury is shown by maintaining them.

A commercial waterway district, as a quasi-municipal corporation, is *sui generis*. There is no other entity like it under the statutes of this state. The usual rule in Washington, cited by appellant, that an abutting upland owner has no riparian or littoral rights in the waters and shores of the

stream, is not conclusive in this instance, and the only right we are concerned with is the right of access. It was established in *Eisenbach v. Hatfield,* 2 Wash. 236, 26 Pac. 539 (1891), that abutting upland owners have no riparian rights, including the right of access, to navigable waters in the state of Washington. The basis of this denial was the Washington Const. Art. 17, § 1, which declares:

"The state of Washington asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide, in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes: *Provided,* that this section shall not be construed so as to debar any person from asserting his claim to vested rights in the courts of the state."

However, we held in *Commercial Waterway Dist. v. Larson,* 26 Wn. (2d) 219, 232, 173 P. (2d) 531 (1946), that whatever rights the state might have acquired by virtue of Art. 17, § 1, in the tidelands created by the diversion of the Duwamish River into its new channel was granted to the district by the provisions of the waterways act, expressly granting to the district the right to acquire the land to be used for the new channel, either by condemnation or purchase, and expressly stating that title to the land so acquired should be vested in fee simple in the district. The area though there denominated as tidelands was also within the 500-foot right of way for the waterway.

Respondent does not contend that the right of access to the navigable channel is without any restrictions whatsoever. The trial court, in finding of fact No. 4, found that the United States Army Corps of Engineers since 1924 had exercised the exclusive authority to issue permits for the erection of structures within the Duwamish Waterway as concerns public rights of navigation. The trial court further found that the acts of the Corps of Engineers had been consented to by the district. Appellant has not assigned error to any of the findings of the trial court and they must be accepted as the facts in the case. *Michielli v. United States Mortgage Co.,* 58 Wn. (2d) 221, 361 P. (2d)

758 (1961); *Fain v. Nelson,* 57 Wn. (2d) 217, 356 P. (2d) 302 (1960). As above pointed out, respondent has received a permit from the Corps of Engineers to erect the dock in question.

Since we are bound by the trial court's finding that appellant has consented to the construction of the dock as far as navigation is concerned (which is of major importance if the waterway is held to be a water highway, as appellant contends), the question arises as to what further consent, if any, must be obtained. The federal permit received by respondent stated on its face that it did not authorize

" . . . any infringement of Federal, State, or local laws or regulations, nor does it obviate the necessity of obtaining *State assent* to the work authorized. *It merely expresses the assent of the Federal Government so far as concerns the public rights of navigation."²*

Assuming, arguendo, that the district could impose regulations and restrictions in maintaining the waterway for commercial purposes, it is not contended by the district that any such regulations and restrictions are being violated or even exist. Respondent constructed its dock and loading facilities in 1946; no objection was raised until 1959. In the meantime, respondent made substantial physical improvements on the upland, and requires access to the main channel of the Duwamish River to operate its business. The operation of this industry benefits the district and the entire state of Washington.

If the past conduct of appellant were not enough to show that respondent's dock does not present a situation where the district could reasonably deny its present use, that fact is shown by appellant's offer to lease. The proposed lease

---

²The permit by express language did not preclude the necessity of Permanente obtaining state assent to construct its proposed facilities, although the federal government can make its assent to erect structures in navigable waters the exclusive requirement.

"It is no longer open to question that the Federal Government under the Commerce Clause of the Constitution (Art. I, § 8, cl. 3) has dominion, to the exclusion of the States, over navigable waters of the United States. . . ." *Tacoma v. Taxpayers,* 357 U. S. 320, 334, 2 L. Ed. (2d) 1345, 78 S. Ct. 1209 (1958).

was to be for 50 years without restrictions on the use of the property. At the trial, it was stipulated by the parties that the subject matter of the lawsuit was the *right* to ejectment and that appellant did not actually want respondent's dock but wanted respondent to acknowledge its title and pay rent.

The trial court held that appellant has no right to exact rental. It is, we conclude, appellant's desire to exact rental from all abutting upland owners that prompted appellant to bring this ejectment action.

If the right of access to the main channel is limited to those who lease a portion of the waterway for their exclusive use, ejectment of respondent might be proper. Thus the issue of the right of appellant to lease the waterway is a proper issue for our determination.

The initial act relating to commercial waterway districts was enacted in Laws of 1909, Ex. Ses., chapter 8, which was declared unconstitutional in *State ex rel. Bussell v. Abraham*, 61 Wash. 601, 112 Pac. 671 (1911). Remedial legislation was passed in 1911 (Laws of 1911, chapter 11) which included certain sections validating districts organized under the earlier act. In *State ex rel. Bussell v. Abraham*, 64 Wash., 621, 117 Pac. 501 (1911), this court held that the curative act could have retroactive effect to validate the establishment of the waterway district involved in the instant case.

The legislature, by Laws of 1917, chapter 152, § 2, amended section 8172 of Remington & Ballinger's Annotated Codes, which, though not specifically so designated, was Laws of 1911, chapter 11, § 7, relating to the powers of commercial waterway districts. Only two subsections were changed—subsection (b) and subsection (d) as herein set forth—the language added by the amendment being designated by italics.

"(b) Said board of commissioners herein provided shall have the right, power and authority to straighten, widen, deepen and improve any and all rivers, watercourses, streams, whether navigable or otherwise, flowing through

or located within the boundaries of said district, *or extensions or enlargements thereof.*

" . . .

"(d) In the accomplishment of the foregoing objects, the commissioners of said waterway district are hereby given the right, power and authority by purchase or the exercise of the power and authority of eminent domain, or otherwise, to acquire all necessary and needed rights of way in the straightening, deepening, or widening, or otherwise improving of such rivers, watercourses or streams, and such auxiliary ditches, canals, flumes and dikes hereinabove mentioned, and when so acquired shall have and are hereby given the right, power and authority by and with the consent and approval of the United States government in cases where such consent is necessary, to divert, alter and change the bed or course of or otherwise improve any such river, watercourse or stream aforesaid, or to deepen, widen and straighten the same: *Provided,* That such diversion, alteration or change shall not be had without payment of compensation or damages for any property rights, riparian or otherwise, that may be taken or damaged thereby. *Said district and its board of commissioners shall also have the right, power and authority to acquire, either by condemnation or purchase, or both, all such property and property rights adjoining or in the vicinity of any system of commercial waterways as may be necessary or advantageous or proper for the construction and establishment of slips, docks, wharves or landing places or other aids to navigation and commerce in connection with the use of any such commercial waterway, and to pay for any or all such, either by means of the proceeds of sale of abandoned beds of streams, which the district may have acquired, or by exchanging property in said abandoned beds, as the board of commissioners may deem advisable. Said district through its board, shall also have power to lease all properties or lands on such terms and in such manner as the commissioners may deem advisable from time to time.*" (Italics ours).

By the amendment the district, through its board of commissioners, was given power to acquire, *in addition* to the land acquired for right of way purposes to construct the waterway, *all such property and property rights adjoining and in the vicinity of any system of commercial waterways.* The district then had the power to lease all properties or

lands on such terms and in such manner as the commissioners may deem advisable from time to time.

Does "all properties and land" include the right of way for the waterway itself? Can appellant reasonably contend that the legislature created a public water highway and also gave the district power to lease part of that water highway on whatever terms and manner the board of commissioners sees fit? We believe appellant cannot be heard to so contend, and that the trial court was correct when it determined that the power to lease applied only to property acquired adjoining or in the vicinity of the waterway.

One must also note that the means of acquiring this additional property was by sale of abandoned beds of streams, which a district may have acquired or by exchanging such property. Thus it was consistent that land which would join or be in the vicinity of a waterway and could be used in a proprietary capacity (see *King Cy. v. Commercial Waterway Dist.*, 42 Wn. (2d) 391, 255 P. (2d) 539 (1953), *supra*) would be exchanged for other such land which could be leased.

The district was to acquire this *property and property rights* for the construction and establishment of slips, docks, wharves or landing places or other aids to navigation and commerce *in connection with the use of any such commercial waterway*.

What *property rights* was the legislature concerned with? We believe it was the right of access which would be necessary for the proposed structures to be used *in connection with the use of any such commercial waterway*.

The district in the case at bar offered to lease not just access rights essential for the commercial utilization of abutting property, but *tracts* of the waterway itself. Should it be able to lease such tracts under the terms of the amendment, it would be able to completely cut off the access rights of the abutting upland owners, if it so desired, and defeat the commercial utilization of their land.

We will not construe "power to lease all properties and land" out of context with the language of other portions of the amendment or the purpose of the whole act. The

appropriate rules of statutory construction were set out in *DeGrief v. Seattle*, 50 Wn. (2d) 1, 10, 297 P. (2d) 940 (1956), as follows: ·  ,

.  " 'It is a rule of statutory construction almost universal that it is the duty of the courts to give such construction to the language of a statute as will make it purposeful and effective, rather than futile and meaningless.' *Denning v. Quist*, 172 Wash. 83, 19 P. (2d) 656.

" 'It is too well-established to need citation of authority that a court may not place a narrow, literal, and technical construction upon a part only of a statute and ignore other relevant parts. In the process of construction, the intention of the lawmakers must be extracted from a consideration of all of the provisions of the act.' *In re Cress*, 13 Wn. (2d) 7, 123 P. (2d) 767.

"In construing a statute, the legislative intent must be gleaned from a consideration of the whole act by giving effect to the entire statute and every part thereof. *State v. Houck*, 32 Wn. (2d) 681, 203 P. (2d) 693, and cases cited.

" 'It is our duty to construe two statutes dealing with the same subject so that the integrity of both will be maintained. *Buell v. McGee*, 9 Wn. (2d) 84, 90, 113 P. (2d) 522 (1941). The same rule applies to the construction of parts of one ·act. Each part must be construed in connection with every other part or section. 2 Sutherland, Statutory Construction (3d ed.), 336, § 4703.' *Tacoma v. Cavanaugh*, 45 Wn. (2d) 500, 275 P. (2d) 933."

Appellant in its brief attempts to ignore that portion of the trial court's conclusions of law which state that the district had no statutory right to lease the disputed tract, and tries to emphasize that portion of the conclusion of law that states it has no constitutional authority to lease under Washington Const. Art. 15. Appellant argues that Art. 15 is not applicable to the district. Consideration of this constitutional question is not necessary to our determination, although it·is undisputed that harbor lines have not been established in the area. Nor do we need to consider the constitutionality of the .district's power to lease property acquired under the amended portion of the waterway act discussed above.  ·

After careful consideration·of the contentions of the parties, we conclude:, (1) The district has no power to lease

any area within the 500-foot right of way it acquired by condemnation and purchase for the construction of the Duwamish Waterway; (2) the district holds title to this same area in its governmental capacity, and respondent cannot acquire title to any portion of it by adverse possession; (3) respondent, as an abutting upland owner, has a right of access to the extent that neither navigation nor any other right of the general public is interfered with.

No further discussion of the issues raised by the parties to this appeal is necessary because of the disposition of the issues stated above.

The judgment of the trial court is affirmed.

OTT, C. J., and HAMILTON, J., concur.

FINLEY, J. (concurring in the result)—The majority opinion holds that the appellant is the fee owner of the land in question but cannot successfully prosecute an ejectment action to have the physical structures of the respondent removed from the right of way or waterway of appellant, on which the structures are presently encroaching. I concur in these judgments of the majority opinion. However, I cannot agree with the majority's interpretation of Laws of 1917, chapter 152, § 2, as not permitting the appellant district to collect a fee for the continuation of respondent's encroachment upon the waterway.

Although the majority opinion quotes the pertinent statute, I think the last sentence of subsection (d) thereof is important enough to warrant reiteration herein:

"Said district through its board, shall also have power *to lease all properties or lands* on such terms and in such manner as the commissioners may deem advisable from time to time." (Italics mine.)

The majority construe the phrase, "all property or land" as meaning all property or land of the district except the waterway right of way. In justifying that interpretation the majority take two tacks, which will now be briefly discussed.

One rationale of the majority appears to be that, since

the legislature created a public *water* highway, it must obviously follow that the waterway district could not lease a part of that highway. But the conclusion which seems so obvious to the majority does not appear to me to be so obvious or imperative. In *Winkenwerder v. Yakima* (1958), 52 Wn. (2d) 617, 328 P. (2d) 873,. upholding the city's contracting to permit a company to install advertising signs on parking meters, we stated at page 624:

"It is generally recognized that a sovereign may lease its property to private parties, so long as there is no interference with the public use. . . ."

Obviously, the appellant district is not the sovereign state, but its authority to lease is derivative therefrom. Its authority under the circumstances should be neither more nor less than the sovereign's. The existence of the general restriction quoted from *Winkenwerder* should alleviate the concern expressed by the majority that the basic public purpose of the water highway would be defeated by the leasing of part of the right of way. (It should be parenthetically noted that the commerce clause of the United States Constitution grants the federal government control over navigable waters; hence, the right to lease portions of the right of way is also subject to federal restrictions or control.) In the present case the respondent's dock and facilities extend only 50′ into the 500′ right of way, of which only the central 250′ are dredged as a channel; and, as pointed out in the majority opinion, the respondent's structures do not constitute an obstruction to navigation. The majority view leasing, or imposition of a fee or charge, as constituting an ultra vires restriction upon the right of public access to the public waterway. My interpretation of the power to lease "all property or land" means that a charge may be made for the physical occupation of the district's property, not that such a charge is made for the use of the waterway itself. Therefore, I would conclude that this objection made by the majority is without sufficient foundation to warrant the majority's restrictive gloss upon the express language of the statute.

The majority, in reaching their interpretation of the statutory provision, "all property or lands," considered the nature of the additional powers conferred upon the district by the 1917 act. In so far as is here pertinent, the Laws of 1917, chapter 152, § 2, constituted a re-enactment and amendment to the Laws of 1911, chapter 11, § 7. The new language contained in Laws of 1917, chapter 152, § 2(d) (which includes the provision for the lease of all property or lands) principally relates to the acquisition of property in the vicinity of the waterway itself. The majority, therefore, interpreted the phrase, "all property or lands," to embrace only those referred to in the preceding sentences. But if that was the intended result, then the last sentence of that subsection should have read, "all *such* property or lands." The majority are clearly correct in stating that we should construe the language of this particular subsection in the context of the other portions of the amendment and the purposes of the whole act. However, I differ in the conclusion which has been reached by such a reading. A reading of the 1917 act indicates that the legislature was clearly expanding the power and authority of the commercial waterway districts, and the authority to lease all property or lands is consistent therewith.

Despite the preceding discussion of the statute permitting the appellant to impose a charge for the continued physical encroachment by the respondent's dock and facilities, such a charge must be disallowed in the instant case. The record indicates that there have not been any harbor lines established in the waterway. And the Washington State Constitution, Article 15, and amendment 15 require the establishment of such harbor lines as a condition precedent to the leasing of such property. In concluding that these constitutional provisions apply, I have rejected the appellant's contention that the Duwamish Waterway is man-made and, therefore, is not a harbor.

Before concluding, I feel compelled to say that respondent's use of a portion of the waterway, whether (a) for free and without fee, under the guise of implementation

of "a right of access," as emphasized by the majority, or (b) under a lease and for a fee, as urged by appellant, raises the ghost of the majority opinion in the case of *Hogue v. Port of Seattle* (1959), 54 Wn. (2d) 799, 341 P. (2d) 171. Any qualms on my part are alleviated by the dissent in *Hogue*. With this qualification and for the reasons stated hereinbefore, I concur in the majority's disposition of this appeal.

HUNTER, J., concurs with FINLEY, J.

May 6, 1963. Petition for rehearing denied.